COMMONWEALTH *vs.* EDWIN T. McKNIGHT.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

SAME *vs.* SAME.

Middlesex. December 10, 1934. — February 25, 1935.

Present: RUGG, C.J., CROSBY, DONAHUE, & LUMMUS, JJ.

*Practice, Criminal*, Trial of indictments together, Exceptions, Appeal with assignments of error, Report, New trial, Requests, rulings and instructions, Ordering verdict, Verdict, Argument by district attorney, Sentence. *Pleading, Criminal*, Indictment. *Conspiracy*. *Bribery*. *Trust Company*, Officers and agents. *Larceny*. *District Attorney*. *District Court*, Special judge.

Although five indictments against the same defendant, one charging larceny, three charging conspiracy to bribe a municipal officer, and one charging that the defendant received a fee, commission, gift or

other consideration in connection with a certain business transaction of a trust company of which he was an officer, were tried together, there was not thereby a merger into one proceeding.

An indictment for conspiracy to bribe a municipal officer charged a misdemeanor only.

An indictment for a misdemeanor cannot be tried in accordance with the provisions of G. L. (Ter. Ed.) c. 278, §§ 33A–33G.

Where the judge presiding at the trial of an indictment for a misdemeanor ordered that it be subject to G. L. (Ter. Ed.) c. 278, §§ 33A–33G, but subsequently allowed a bill of exceptions saved at the trial, the case properly was before this court upon the exceptions and such order must be taken to have been entered improvidently.

The right of the defendant to a review by this court of exceptions saved at the trial of an indictment in accordance with G. L. (Ter. Ed.) c. 278, §§ 33A–33G, was lost where he did not claim nor perfect an appeal as required by that statute.

Where, following the trial together of indictments which were not merged into one proceeding, the defendant, who was found guilty under each indictment, duly procured the allowance of a bill of exceptions with respect to one indictment, but failed to take the proper steps to secure a review by this court with respect to the other, and in each case the trial judge denied a motion by the defendant to stay sentence, there was no error nor abuse of discretion in the denial of a motion by the defendant that the two cases be consolidated into a single report to this court; the denial of the motions imported a finding by the trial judge that, within the meaning of G. L. (Ter. Ed.) c. 278, § 30, there existed no question of law so important or doubtful as to require a decision by this court.

There was no incompatibility in law in the trial together of an indictment for a felony, which was made subject to G. L. (Ter. Ed.) c. 278, §§ 33A–33G, by order of the trial judge, and an indictment for a misdemeanor.

An exception to a ruling must first be saved seasonably before that ruling can be reviewed by this court under the procedure established by G. L. (Ter. Ed.) c. 278, §§ 33A–33G.

The mere fact, that an assistant district attorney who represented the Commonwealth before a grand jury in procuring an indictment and at the trial of the indictment so procured was also a special judge of a district court, did not require that the indictment be quashed.

Questions of law which were or might have been raised by the defendant at the trial of an indictment cannot be raised as of right at the hearing of a motion for a new trial.

Where a judge who heard a motion by the defendant for a new trial of an indictment made, on numerous requests for rulings by the defendant, an indorsement to the effect that such of the requests as presented questions of law "that may be raised on said motion for new trial are denied," the indorsement did not mean that the judge intended to follow the unusual course of considering such requests as raised questions of law which were or might have been raised at the trial, but meant that he declined to consider those, and refused the

requests with respect to which the defendant, under the usual practice, was entitled as of right to his decision.

A verdict of guilty was warranted on all the evidence at the trial of an indictment, based on G. L. (Ter. Ed.) c. 268, § 7, for conspiracy to bribe a municipal officer, including evidence that on one occasion a building contractor asked the defendant's help in securing the contract to construct a public school in a city, to which the defendant replied that that would cost a lot of money; that then and thereafter, upon the defendant's demand, the contractor paid to him large sums in cash; that the contract was awarded to the contractor; that on a later occasion another such contract was awarded to the contractor, following which the defendant demanded of and received from the contractor a further substantial sum of money; that on a still later occasion a third such contract was awarded to the contractor, following which the defendant stated to him that he had helped in getting the contract and demanded a substantial sum of money, which the contractor paid to the defendant; that on two of the occasions the contractor paid substantial sums, for purported services in connection with the contracts, to a law firm of which the defendant was a member; and that on each occasion, at substantially the same time when the money was paid to the defendant, a member of the school-house building commission of the city received money in consideration of his part in awarding the construction contract to the contractor.

Evidence, that the president of a trust company which was financing contracts of a building contractor demanded and received of the contractor money as a condition of the trust company's continuing to furnish credit to the contractor, warranted a verdict of guilty at the trial of an indictment against the president, based on G. L. (Ter. Ed.) c. 172, §§ 16, 17, 72, charging that he received a fee, commission, gift or other consideration in connection with a certain business transaction of a trust company of which he was an officer.

A verdict of guilty was warranted at the trial of an indictment for larceny where the evidence justified a finding that the defendant obtained money from another by false pretences that he intended to use it to bribe a municipal officer for the benefit of the person paying it, or a finding that, if the defendant, when he obtained the money, had the intention of so using it, he thereafter embezzled a part of it by appropriating it to his own use.

The ordering of a verdict of not guilty on certain counts of one of several indictments tried together did not have the effect of striking out such evidence bearing on those counts as was relevant to the issues which were submitted to the jury.

Where, at the trial together of an indictment for conspiracy to bribe a municipal officer and of an indictment for larceny, there was evidence that pursuant to such a conspiracy the defendant obtained money from another, and indirectly paid part of the money to a municipal officer and embezzled part by appropriating it to his own use, there was no inconsistency between verdicts of guilty on both indictments.

Where an indictment for larceny contained three counts, each charging a separate and distinct offence, and the defendant was found guilty

on each count, it was proper, under G. L. (Ter. Ed.) c. 266, § 40, to make the entry that the defendant, having been convicted of three distinct larcenies at the same sitting, was adjudged a common and notorious thief, and to sentence him to a term at the State prison; and the correct form of adjudication was followed.

A contention that there was impropriety in the closing argument of the district attorney at the trial of an indictment was not open to the defendant before this court where objection was not made by him at the time of the alleged impropriety.

FIVE INDICTMENTS, the first found and returned on October 13, 1932, and the others on October 18, 1932, described in the opinion.

The indictments were tried together in the Superior Court before *Collins*, J. Material evidence and the records as presented to this court are described in the opinion.

Portions of the charge to the jury with respect to larceny were as follows:

"If you say he did give Frankini that impression, by words or conduct, but that at the time he had no intention of using those moneys for the improper purpose, then clearly that is a misrepresentation of intention on the part of McKnight, and therefore a misrepresentation of fact, therefore a false pretense: and if you say that the money or those moneys, were obtained by a false pretense, then the crime of larceny, under the statute, has been made out.

"Suppose, on the other hand, you say, 'Yes, McKnight got those three sums, got them in cash': Suppose you say that when he got them, it was the clear understanding between him and Frankini, by inference or otherwise, that those moneys were going to be used for an improper purpose, and assume that McKnight intended at the time to use them for the improper purpose or purposes, if that is your view of the evidence, then there is no misrepresentation on the part of McKnight, and the crime of obtaining money under false pretences is not made out by the Commonwealth. . . .

"If you say that McKnight didn't obtain these moneys under false pretences, or under misrepresentations, as I have defined what is meant by those words, it is the Commonwealth's contention that these sums, or part of said sums, were embezzled by McKnight.

"Now, what is meant by the word 'embezzlement'? Well, embezzlement may be defined generally as the fraudulent appropriation of another's property by one who has the lawful possession of it. . . .

"Now, what is the theory upon which the Commonwealth is proceeding in that particular? It is as follows: The Commonwealth contends that if you say that Frankini and McKnight had these transactions under which the moneys were handed over to McKnight, and McKnight at the time intended to use it for the improper purpose — I say, intended to use it, at the time he got the moneys, for the improper purpose — and then, did use some of it for the improper purposes, or used none of it for the improper purposes, but kept the money himself, then the Commonwealth claims that he embezzled either the whole or part of those moneys.

"To make it a little simpler, and in accordance, perhaps, with the evidence, the Commonwealth claims, if you take this view of the case, that McKnight intended to use the money for the improper purposes and then used part of it, or parts of those moneys, for the improper purposes, but retained some of it.

"Well, the law is rather clear, gentlemen. Even though you say that Frankini was a party to an alleged conspiracy, and the money belonged to the Frankini company, and he entered into that arrangement with McKnight whereby, by inference, the money was to be handed over improperly, for an improper purpose, yet, although Frankini may be subjected to punishment for his participation in it, within the criminal law, yet that does not justify the other person in putting any of the moneys thus obtained into his own pocket. . . .

"If you say that this money was not obtained — when I say 'this money,' I would rather use the plural, because I am trying to shorten this charge, and there are three counts here — if you say that the three sums in question were not obtained by false pretences, then you come, as I have already indicated, to the question of whether or not those sums, or any part of those sums, were embezzled by McKnight.

"If you say that part of those sums was embezzled by McKnight, it isn't necessary that you find that any specific sum or sums were embezzled, stating the amount of them, unless you find that the sum or sums embezzled was less than $100. If you say the latter, you should make it known in your verdict, gentlemen.

"If, on the other hand, you say there was embezzlement, and the embezzlement comprehended sums greater than $100, it isn't necessary to mention any amount, if you find that any parts of the $5,000, $3,000, or $8,000 were embezzled by McKnight.

"Before leaving this rather technical subject, let me impress this upon your minds: That you haven't any right to say, 'Well, I will piece both of them together — namely, false pretences and embezzlement — and reach a conclusion by so doing.'

"You haven't any right to do that, gentlemen. Mc-Knight, under these counts, is either guilty or not guilty of obtaining money under false pretences, as I have defined it, and he is either guilty or not guilty of obtaining the sums indicated, or any portion thereof, by embezzling them.

"In other words, the Commonwealth must stand or fall on its contentions. The crime as charged must be either obtaining money under false pretences, or embezzlement. It may, in your opinion, be neither: it may, in your opinion, be one or the other, but it can't be part of one and part of the other."

*E. M. Dangel,* (*L. E. Sherry & E. F. Connelly* with him,) for the defendant.

*F. A. Crafts,* Assistant District Attorney, for the Commonwealth.

RUGG, C.J. These three records relate to five indictments against one defendant. The first was returned on October 13, 1932, and the others were returned on October 18, 1932. The first was in six counts and charged six separate larcenies of money. Verdicts in favor of the defendant were directed on counts 2, 4 and 6. The remaining counts respectively charge that the defendant did steal from

Frankini Bros. Co. Inc. on June 21, 1929, $5,000, on July 18, 1929, $3,000, and on August 6, 1930, $8,000. The next three indictments are comprised in one bill of exceptions so far as concerns proceedings before verdicts, and in three bills of exceptions as to proceedings subsequent to the verdicts; each indictment charges that the defendant, within specified periods of time with two others unknown, did conspire to bribe municipal officers of the city of Medford in violation of G. L. (Ter. Ed.) c. 268, § 7. The fifth indictment, set forth in another bill of exceptions, charges in two counts, one specifying $4,000 on July 21, 1930, and the other $2,000 on October 15, 1930, that the defendant did receive a fee, commission, gift or other consideration in connection with a certain business transaction of a trust company of which he was an officer: these counts are based on G. L. (Ter. Ed.) c. 172, §§ 16, 17, 72, and charge misdemeanors. On April 25, 1933, verdicts of guilty were returned on all the counts in the several indictments submitted to the jury. On May 1, 1933, sentences were imposed as follows: On each of the three indictments for conspiracy, the defendant was sentenced to the house of correction for two years, the sentences to be served concurrently. On the indictment for receiving fees as an officer in connection with the business of the trust company, he was sentenced for one year on each count, to be served concurrently with the sentences on the conspiracy indictments. On the larceny indictment, the entry was made that the defendant, having been convicted of three distinct larcenies at the same sitting, was adjudged a common and notorious thief and was sentenced for a term to the State prison, the sentence to take effect after the expiration of the other sentences imposed. G. L. (Ter. Ed.) c. 266, § 40.

All the indictments were tried together. As already shown, they related to several distinct matters. Therefore, the trial of them together was not a merger into one proceeding. That hardly could be done as to indictments or prosecutions for crime. This method was pursued merely for convenience, each indictment continuing separate and distinct so far as concerns docket entries, procedure, ver-

dicts, judgments and all other aspects save only the one of joint trial. *Lumiansky* v. *Tessier*, 213 Mass. 182, 188.

In the larceny case there is an appeal and assignment of errors by the defendant, but it does not relate to proceedings at the trial before the jury. It is stated in that record that it was ordered by the court that "this case is subject to" G. L. (Ter. Ed.) c. 278, §§ 33A–33G, inclusive. That order was within the power of the trial judge under G. L. (Ter. Ed.) c. 278, § 31, because the several larcenies charged in this indictment were felonies under G. L. (Ter. Ed.) c. 266, § 30, each being in excess of $100 in amount. That order was never revoked nor modified, although there is a stipulation signed by counsel and approved by the trial judge as to use in argument for certain purposes of the record in the conspiracy indictments. The bill of exceptions relating to the three indictments charging conspiracy to bribe municipal officers states that it was ordered that the trials of all the above indictments proceed and that all of said "indictments be subject to" G. L. (Ter. Ed.) c. 278, §§ 33A–33G. That order can hardly be taken to mean that the trial was to proceed in accordance with the practice prescribed by those sections, because they apply only to charges of murder, manslaughter and other felonies. Each of these three indictments charges a conspiracy to commit a felony, which is only a misdemeanor, *Commonwealth* v. *Stuart*, 207 Mass. 563, 571, *Commonwealth* v. *Marsino*, 252 Mass. 224, 232, *Fox* v. *Commonwealth*, 264 Mass. 51, 53, *People* v. *Tavormina*, 257 N. Y. 84, 90–91. Therefore, those indictments could not be tried in conformity to G. L. (Ter. Ed.) c. 278, §§ 33A–33G. *Commonwealth* v. *McDonald*, 264 Mass. 324, 334–335. That order appears to have been disregarded, because a bill of exceptions in common form has been allowed and is before us. No question was seasonably raised on the record as to procedure touching those indictments. The filing of exceptions was proper practice and the order for trial subject to G. L. (Ter. Ed.) c. 278, §§ 33A–33G, must be taken to have been improvidently entered. *Commonwealth* v. *Vallarelli*, 273 Mass. 240, 245.

The only way in which the defendant could of right bring. questions of law, saved at the trial of the indictment charging him with receiving a fee, commission, gift or other consideration in connection with the business of a trust company of which he was an officer, before this court for review was by exceptions. He did not within the specified time after verdict, or within that time as extended, file a bill of exceptions as to the trial of that indictment on the merits before the jury. The single bill of exceptions touching that indictment relates exclusively to matters occurring after verdict. He did not, before the expiration of the time for filing exceptions, obtain an order that a single consolidated bill of exceptions be filed covering all the cases. The extension of time granted as to filing exceptions in the conspiracy cases had no effect upon the other cases. The right of the defendant to a review by this court of exceptions taken before the verdict and during the trial of the indictment charging him with the several larcenies has been lost, because he did not file claim of appeal within twenty days after verdict in conformity to the requirements of G. L. (Ter. Ed.) c. 278, § 33B, and did not perfect his appeal as there directed. Several months later the defendant filed in the larceny case and the case for receiving a fee, commission, gift or other consideration in connection with the business of the trust company a motion requesting the trial judge to consolidate these two cases with the three conspiracy cases into a single report to this court. This motion was denied in each case with the notation that the trial judge ruled, that he had the power, but in the exercise of his discretion refused, to grant the motion.

In this there was no error. The procedure by G. L. (Ter. Ed.) c. 278, §§ 33A–33G, inclusive, is clear. It has been explained in *Commonwealth* v. *McDonald*, 264 Mass. 324, 334–336. There is no room for misunderstanding as to the method to be pursued in order to preserve rights saved at a trial of a misdemeanor in the Superior Court. If the defendant had desired that all the trials should proceed without regard to G. L. (Ter. Ed.) c. 278, §§ 33A–33G, or that a single bill of exceptions be filed covering all the

cases, or that all questions be embodied in a single report under G. L. (Ter. Ed.) c. 278, § 30, steps to one or another of .those ends should have been taken before the expiration of the time to appeal or to file exceptions. *Buchannan* v. *Meisner,* 279 Mass. 457, 461–462, and cases cited. *Stanwood* v. *Adams Garage Inc.* 281 Mass. 452. *Flood* v. *Grinnell,* 286 Mass. 214. This conclusion is not at variance with *Barrell* v. *Globe Newspaper Co.* 268 Mass. 99, 102, and cases there cited, as to the desirability of a single bill of exceptions covering several cases tried at the same time. There was no incompatibility in law in combining in one joint trial a felony under G. L. (Ter. Ed.) c. 278, §§ 33A–33G, and several misdemeanors charged in other indictments. *Commonwealth* v. *Gallo,* 275 Mass. 320. There was no difference in the rules of evidence or of procedure applicable to the trials of the different indictments. The same law governs all of them. The only difference consists in the methods of obtaining review of alleged errors of law as to which exceptions have been saved. Those differences do not arise until after verdicts of guilty have been returned. No exception appears to have been saved to the joint trial.

There is nothing to indicate an abuse of discretion on the part of the trial judge in refusing to report the cases in which the defendant had failed to preserve his rights. Of course, the exercise of sound judicial discretion imports the invocation of reason, courage, impartiality and conscience to accomplish in a calm spirit a result in conformity to law and fair both to the public and to the defendant. *Davis* v. *Boston Elevated Railway,* 235 Mass. 482, 496–497. *Universal Adjustment Corp.* v. *Midland Bank, Ltd. of London,* 281 Mass. 303, 316. *Langnes* v. *Green,* 282 U. S. 531, 541. The facts disclosed did not require the granting of the motion. *Wiakowicz* v. *Hwalek,* 273 Mass. 122. *Russell* v. *Foley,* 278 Mass. 145. *Manzi* v. *Carlson,* 278 Mass. 267. In each of these cases the trial judge denied a motion to stay sentence. The denial of these motions and of the motions to report the cases imports a finding by the trial judge that no question of law exists so important or doubtful as to require a decision by this court. G. L. (Ter. Ed.) c. 278, § 30. There is

no indication of error in these respects. *Commonwealth* v. *Child*, 10 Pick. 252.

It follows that no questions as to the proceedings before verdict are before us in the larceny case or in the case charging the defendant with receiving fees, commissions, gifts or other consideration in connection with the business of the trust company of which he was an officer. In the larceny record no exceptions were saved except to the denial of the motion for a new trial filed in May, 1933, to the denial of the motion for a report and the ruling in connection therewith, and to the denial of requests for rulings in connection with the motion for a new trial filed on April 17, 1934. On the latter date, motions for new trial were filed in all the cases. These will be considered later. As to the other matters appearing on that record, there was either no exception or simply an appeal. An appeal is not the equivalent of an exception. It is of no effect as to rulings of law granted or denied in a case tried like the present. Under the procedure established by G. L. (Ter. Ed.) c. 278, §§ 33A–33G, exception or exceptions must first be seasonably saved. A claim of appeal must be filed within twenty days after verdict. The assignment of errors must conform to the exceptions. It must be filed within ten days after a notice from the clerk that a summary of the record has been completed. *Commonwealth* v. *McDonald*, 264 Mass. 324, 336. *Commonwealth* v. *Zelenski*, 287 Mass. 125, 128.

Many of the questions sought to be raised in these two cases are presented in the exceptions on the conspiracy indictments and will be discussed in that connection.

The evidence is set forth at length in the exceptions on the conspiracy indictments. It may be summarily stated as follows: One Frankini, as owner of all but two shares of stock in a corporation called Frankini Bros. Co. Inc., was carrying on the business of a building contractor in Medford in 1929 and 1930. His testimony was this, shortly stated: In June of 1929 he made a bid for the construction of an addition to the Medford High School. Although his bid was much lower, it was voted to award the contract to

another.  Frankini then saw the defendant at the Medford
Trust Company, of which he was an officer, on June 21, 1929,
and asked his help in getting the contract.  The defendant
said that he would have to spend a lot of money to get that
contract, it would cost a lot of money, and demanded of
Frankini $5,000 in cash.  Frankini thereupon drew his check
on the Medford Trust Company for that sum, got the cash
and handed it to the defendant in his office.  The bids, then
pending, later were thrown out and new bids were asked for
and submitted.  The Frankini company was awarded the
contract for about $445,000.  Thereafter, on July 10, 1929,
the defendant demanded $5,000 more.  Frankini said in
substance he did not know what the money was paid for
and the defendant replied that it was better for him not to
know.  Frankini testified that he finally paid $1,500 at
about that time and $3,000 on July 18, 1929, making a
total of $9,500 on the first Medford contract.  The defend-
ant was a member of Eaton and McKnight, a firm of lawyers
who were counsel for the Frankini corporation.  Two bills
for legal services, each for $1,000, were rendered on account
of this contract and were paid to that firm.  Frankini made
no request for legal services in this connection in his conver-
sations with the defendant and did not know what, if any,
services were rendered.  In 1930, the Frankini corporation
was awarded a second contract for an addition to the Med-
ford High School, which was dated July 19, 1930.  Two days
later the defendant demanded $4,000 of Frankini, saying
that if it was not paid no more money could be got from the
Medford Trust Company, which was financing the contracts,
and the defendant would help Frankini no more.  As a con-
sequence of this talk Frankini, on or about July 21, 1930,
paid the defendant $4,000.  Early in August, 1930, the de-
fendant told Frankini that he could help the latter get a
contract for a school building in Somerville on which a bid
already had been submitted by the Frankini company, and
that it would cost $8,000 to get that contract and to put it
through.  That sum was paid to the defendant by Frankini
in cash on August 6, 1930.  The contract price for this build-
ing was $338,382.  There was paid to the defendant's law

firm by check on August 8, 1930, the sum of $1,000 for legal services in connection with this contract. On September 11, 1930, the Frankini corporation entered into a contract for the construction of a school building in West Medford for $114,175. This contract was financed through the Medford Trust Company for the Frankini corporation, as were all the other contracts. Early in October, 1930, the defendant told Frankini that he had helped in getting that contract and must be paid $2,000, and that if that amount was not paid Frankini need never do business with him or the trust company again. Frankini had not asked the defendant for any assistance on this contract, but on or about October 15, 1930, he paid the defendant in cash $2,000 and paid his law firm $500 for services. No part of these sums paid by Frankini to the defendant was ever returned or accounted for by the defendant. One Leary, a member of the schoolhouse building commission of Medford, testified that he had a conversation with the defendant shortly after the first bids for the Medford High School addition were thrown out; that he received $4,000 before July 18, 1929, as consideration for his votes in connection with throwing out the first bids on the first high school contract and with awarding the contract to the Frankini corporation on the second bids, and that one of these payments was $1,500 on July 10, 1929; that he received $1,000 on July 18, 1929, $500 on July 27, 1929, $250 on July 31, 1929, and $1,000 on September 24, 1929; that he received $2,000 for his vote to award the second Medford High School contract to the Frankini corporation, half of which was paid him on August 28, 1930, and that he could not tell when he received the other half; that he received on or about October 25, 1930, $1,000 in consideration of the award of the contract for the West Medford school building to the Frankini corporation; that he received this last payment from a named person other than the defendant; and that he could not say definitely from whom he received the other payments but it was one of three persons, no one of whom is named in the record. Other members of the schoolhouse commission and the mayor and some other executive officers of Medford, and

the mayor and certain other executive officers of Somerville, testified that they received no money in connection with awards of contracts to the Frankini corporation. There was evidence to the effect that the defendant, in August, 1932, testified at a hearing before a master that he received from Frankini $7,000 in connection with the awarding of the Somerville school contract and turned it over the same day to a man in payment for services, that he received $2,000 in connection with the awarding of the contract for the West Medford school and turned that over to a man and that he received $5,000 in connection with the Medford High School contract and turned that over to two or three men; and that he denied that he was ever paid $4,000 in connection with the second Medford High School contract.

Motions to quash the indictments were filed, based on the ground that the assistant district attorney who was with the grand jury in hearing the evidence and who conducted the trials in behalf of the Commonwealth in the Superior Court was also a special justice of a district court. The question was perhaps raised in other forms. The defendant had pleaded generally to the indictments before this objection was suggested but time was allowed for filing special pleas. The contention of the defendant that for this reason the indictments and the trials were invalid cannot be supported. That precise point has been decided adversely to the arguments of the defendant in *Commonwealth* v. *Coshnear, ante,* 516. It need not be further discussed.

The defendant filed a motion for a new trial in each case on April 17, 1934. G. L. (Ter. Ed.) c. 278, § 29. *Commonwealth* v. *Marrelli,* 266 Mass. 113, 116. These motions were identical except in a single particular not material in this connection. Numerous grounds were alleged appropriate to such motions, including newly discovered evidence. Many other grounds were alleged which could and ought to have been raised at the trial on the merits. At the hearing on these motions, the defendant presented in each case divers requests for rulings. Each motion was denied. On

each series of requests for rulings, the trial judge made an indorsement to the effect that the within requests that presented any ruling or rulings of law "that may be raised on said motion for new trial are denied." This indorsement is not susceptible of the meaning that the judge intended to open for consideration questions of law set forth in those requests for rulings which might have. been raised at the trial. He had refused to report such questions of law under G. L. (Ter. Ed.) c. 278, § 30. "It has been the unbroken practice both under the statute and at common law respecting motions for new trial not to examine anew the original trial for the detection of errors which might have been raised by exceptions taken at the trial." *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 24, and cases cited. Only questions of law which could as of right be raised for the first time on a motion for new trial are to be considered. *Matter of Carver*, 224 Mass. 169, 171. *Commonwealth* v. *Chin Kee*, 283 Mass. 248, 256. It has been said many times in substance that questions of law that were or might have been raised at the trial cannot be raised on a motion for new trial. The reasonable construction of the action of the trial judge is that he denied such requests of law as in conformity to the usual practice might rightly require his decision on a motion for a new trial. He did not attempt to follow the unusual course of exercising his discretion to consider all requests even though they might have been raised at the original trial. *Lonergan* v. *American Railway Express Co.* 250 Mass. 30, 38. *Boyd* v. *Boston Elevated Railway*, 224 Mass. 199, 202. *Shour* v. *Henin*, 240 Mass. 240, 244. *Loveland* v. *Rand*, 200 Mass. 142, 144. *Harvard Trust Co.* v. *Cambridge*, 270 Mass. 403, 409. *Malden Trust Co.* v. *Perlmuter*, 278 Mass. 259. This indorsement on the requests means that, without undertaking to select from the large number of requests for rulings presented those, if any, which might be presented as matter of right on a motion for a new trial, he denied all such requests and refused to resurrect and revivify the others which ought to have been raised at an early stage of the proceedings.

The only request for ruling which bore relation to the

motions for new trial and could not have been raised at earlier stages of the proceedings was to the effect that as matter of law the newly discovered evidence presented at the hearing on the motion for new trial, if believed, was sufficient to warrant the granting of the new trial. That request rightly has not been argued and is taken to be waived. It is manifest that the trial judge heard and considered that evidence and did not think it warranted granting a new trial. Therefore it is unnecessary to consider arguments of the defendant based on the theory that every possible question of law which might have been open on a denial of his requests for rulings, if presented at the trial, must now be considered. Since, however, the result must be the same to the defendant in any event, there is no objection to stating conclusions of substantive law requiring that result. *Commonwealth* v. *McNary*, 246 Mass. 46, 48. Some of these questions must be considered in the conspiracy indictments, which are here on exceptions taken during as well as subsequently to the trial.

There was no error in the denial of the requests for directed verdicts. There was ample evidence of the conspiracy. Testimony as to the payment of large sums of money by Frankini to the defendant was of itself highly significant. The transactions surveyed as a whole might well have been found to be lacking in any honest purpose on the part of the defendant. There was explicit testimony to the effect that a public officer of Medford was bribed. The identity of one person by whom the bribe reached him was shown by evidence. Cash in large sums was paid to the defendant by Frankini substantially at the same times that the bribes were paid. Some of the statements made by the defendant to Frankini may have been interpreted, in the light of other facts disclosed by the evidence, to contemplate bribery of some public official of the city of Medford. Payment in currency, when according to common experience checks are used in legitimate transactions, has a sinister appearance. Connection between the payments of cash by Frankini to the defendant and payment of the bribes to Leary might well have been inferred from

all the attendant conditions. There must have been some one to assist the defendant. The existence of an accomplice might have been found to be an implication reaching to a moral certainty, if all the testimony was believed. There is no evidence that the name or names of the coconspirators were known to the representatives of the Commonwealth. There is no variance between the allegations and proof. All the circumstances warranted a finding of the existence of the conspiracy as alleged. There is no merit in the exceptions to the charge on these indictments. *Attorney General* v. *Tufts*, 239 Mass. 458, 493–494. *Attorney General* v. *Pelletier*, 240 Mass. 264, 312, 313, 314. *Commonwealth* v. *Dyer*, 243 Mass. 472, 483, 484, 485. *Morrison* v. *California*, 291 U. S. 82. Manifestly, the motion to strike out the testimony of Leary was denied rightly. There was evidence warranting a finding that he was bribed by the defendant.

The evidence already narrated was categorical to the effect that money was demanded by the defendant as charged in the indictment as a condition of continuance of furnishing credit to the Frankini company by the Medford Trust Company, of which the defendant was an officer, and that the money thus demanded was paid. It might have been found that there was no other purpose in demanding or in making such payments except to obtain continuance of that credit. That might have been found to constitute violation of G. L. (Ter. Ed.) c. 172, §§ 16, 17, 72. The transactions on the evidence appeared not to fall within the innocent exceptions set forth in those sections.

There was evidence adequate to support the verdicts of guilty on the counts in the larceny indictment. It might have been found that the defendant obtained the money by false pretenses as to his intentions touching its use. It was said in *Commonwealth* v. *Walker*, 108 Mass. 309, at page 312: "the definition of a false pretense in *Commonwealth* v. *Drew*, 19 Pick. 179, 184, is 'a representation of some fact or circumstance, calculated to mislead, which is not true.' A man's intention is a matter of fact, and may be proved as such." To the same effect is *Feldman* v. *Witmark*, 254

Mass. 480. *Keeler* v. *Fred T. Ley & Co. Inc.* 65 Fed. Rep. (2d) 499, 501. There is nothing inconsistent with this in *McCusker* v. *Geiger*, 195 Mass. 46, 54, *Commonwealth* v. *Quinn*, 222 Mass. 504, *Loughery* v. *Central Trust Co.* 258 Mass. 172, or *Ernest F. Carlson Co.* v. *Fred T. Ley & Co. Inc.* 269 Mass. 272.

Whether the defendant obtained the money by false pretences, or embezzled it after having received it for a different purpose, was a question of fact. *Commonwealth* v. *King*, 202 Mass. 379, 391. The charge fully and accurately covered this branch of the case. The direction of a verdict on counts 2, 4 and 6 of the larceny indictment did not have the effect of striking out the evidence bearing on those counts which was relevant to other issues on trial.

There is no inconsistency between the verdicts on the conspiracy indictments and those on the larceny charges. The moneys paid to the defendant by Frankini were ample to satisfy all the payments made by the defendant in pursuance of the conspiracy charged and the several larcenies charged.

There was no error in the sentence of the defendant on the larceny indictment as a common and notorious thief. The terms of G. L. (Ter. Ed.) c. 266, § 40, so far as applicable, are that "whoever is convicted at the same sitting of the court . . . of three distinct larcenies, shall be adjudged a common and notorious thief, and shall be punished by imprisonment in the state prison . . . ." The defendant was within this provision. Each larceny of which he was convicted was separate and distinct from the others. These larcenies were committed at different times. They related to two separate and distinct contracts of the Frankini company made at two different times as to the construction of different buildings. They do not appear to have been a part of a single scheme. When the first was committed, which was before any contract was made, it could not in the nature of things be known to the defendant that opportunity would arise for the second. So, also, at the time of the second larceny there were no means of foreseeing that there could be a third of the nature disclosed by

the evidence. The correct form of adjudication was followed. *Haggett* v. *Commonwealth*, 3 Met. 457. *Commonwealth* v. *Ponzi*, 256 Mass. 159, 161. This statute and procedure are quite different from cases where a heavier sentence is imposed for a second conviction for the same offence and where there must be an allegation of the previous conviction as an integral part of the offence. *Commonwealth* v. *Harrington*, 130 Mass. 35. *Commonwealth* v. *Cody*, 165 Mass. 133. *Commonwealth* v. *Fortier*, 258 Mass. 98. That principle has no relevancy to the case at bar.

The contention that there was impropriety in the closing argument of the prosecuting officer is not open in any event. Objection must be made at the time of the alleged wrongful argument in order that there may be immediate correction of the error if any has been committed. A whole trial ought not to go for naught because an objection was not then raised but was mooted for the first time in an application for reargument. *Commonwealth* v. *Richmond*, 207 Mass. 240, 250. *Commonwealth* v. *Peoples Express Co.* 201 Mass. 564, 580–581. *Commonwealth* v. *Cabot*, 241 Mass. 131, 148. *Commonwealth* v. *Godis*, 266 Mass. 195.

There was no error in the denial of the motions for a new trial and the rulings requested in connection with them. The disposition of these motions and requests rested in sound judicial discretion. There was no abuse of discretion. *Commonwealth* v. *Teregno*, 234 Mass. 56. *Commonwealth* v. *Russ*, 232 Mass. 58, 82. *Commonwealth* v. *Devereaux*, 257 Mass. 391. *Commonwealth* v. *Dascalakis*, 246 Mass. 12, 25. *Commonwealth* v. *Belenski*, 276 Mass. 35, 50.

The charge was full and adequate. It fairly presented to the jury all the issues to be decided. It was in accordance with correct rules of law.

Careful examination has been made of all the arguments presented in behalf of the defendant. Further discussion is not necessary.

In the larceny indictment the judgment is affirmed and in the other cases the exceptions are overruled.

*So ordered.*