## LA VAUL vs. THE STATE.

[INDICTMENT FOR LARCENY OF MULE.]

1. *Bringing stolen property into this State; form of indictment.*—An indictment for bringing into this State property stolen elsewhere, (Code, § 3138,) must be framed under the statute which creates the offense : a conviction cannot be had under an indictment in the form prescribed for larceny.

FROM the Circuit Court of Madison.
Tried before the Hon. W. J. HARALSON.

THE indictment in this case, which was found on the 14th March, 1866, charged that, before the finding thereof, "Walter LaVaul feloniously took and carried [away] a horse mule, the property of William T. Medley, of the value of more than one hundred dollars ; against the peace," &c. "On the trial," as the bill of exceptions states, "the State introduced W. T. Medley as a witness, who proved, that he lived in Warren county, Tennessee ; that in February, 1866, he owned a large, brown horse mule ; that said mule was there stolen from him, on the — day of February, 1866 ; that he came on the next day, and tracked the mule to Huntsville, Alabama, and there found him in the possession of the defendant; and that the mule was worth one hundred and twenty-five dollars. The defendant moved the court to exclude from the jury that portion of the evidence which had reference to the taking of the mule in Tennessee ; which motion the court overruled, and the defendant excepted. The defendant then moved to exclude all the evidence ; which motion the court also overruled, and the defendant excepted. There was no other evidence offered. The court charged the jury, that it was immaterial where the mule was stolen, if they believed that it was stolen, and found in the possession of the defendant, and that possession was unexplained. The defendant excepted to this charge, and requested the court to instruct the jury,

La Vaul v. The State.

1st, that if the mule was stolen in Tennessee, the defendant could not be convicted under this indictment; 2d, that if they believed the evidence, they would find the defendant not guilty of the offense charged in the indictment. The court refused each of these charges, and the defendant excepted to their refusal."

WALKER, BRICKELL & LEWIS, for the prisoner.
JNO. W. A. SANFORD, Attorney-General, *contra*.

JUDGE, J.—The indictment in this case is in the usual form for the larceny of a mule, averred to be "over the value of one hundred dollars. " The only evidence as to the larceny was, that the mule had been stolen in the State of Tennessee, and was found in the possession of the prisoner in the county of Madison, shortly after the offense had been committed. Section 3138 of the Code provides, that this offense shall be punished in the same manner, and to the same extent, as if the property thus brought into, had been stolen in the State; and the main question to be determined is, whether the prisoner should not have been indicted under the statute, instead of for grand larceny as at common law.

It was decided in England, at an early period, that where goods, seized piratically on the ocean, were carried by the thief into a county in England, the common-law judges would not take cognizance of the larceny; "because," said they, " the original act, namely, the taking of them, was not any offense whereof the common law taketh knowledge; and, by consequence, the bringing of them into a county could not make the same felony punishable by our law." *Butler's case*, cited in 13 Co. 53; 3 Inst. 113. And this doctrine has been applied, in England, both to goods stolen in other parts of the king's dominions, and to goods stolen in foreign countries.—1 Bishop's Cr. Law, § 105, and cases there cited. See, also, Leading Cr. Cases, 224.

So far as respected goods stolen in Scotland, this inconvenience in the law was remedied by the statute of 13th Geo. 3, ch. 31.—*Simmons v. Commonwealth*, 5 Binney, 617. The reason for the distinction between such a case,

and stolen goods carried from one county into another in the same state or kingdom, is thus stated by Yeates, J., in the case last cited : "In the latter instance, general laws pervade the whole government, and prescribe penalties on distinct offenses. The *autre fois* convict in one county, may be pleaded in bar ⁚ to another prosecution for the same offense in another county. But not so as between distinct and independent states governed by different laws."

Upon this doctrine of the common law, there has been a contrariety of decision in the American courts ; some of the States applying the English doctrine, and others discarding it.—See Bishop's Cr. Law, § 108, for the cases. And some, if not most of the States, now have statutes remedying the defect or inconvenience in the common law, above stated.

As early as 1807, Alabama being then under a territorial government, the legislature provided for the punishment of the offense of stealing horses, or other goods and chattels, "from any person in any place out of the territory," and afterwards having the same in possession within the territory ; any person thus offending, it was provided, might be "indicted for horse-stealing, or other larceny," in whatever county he might be found with the stolen property in possession.—Aiken's Digest, 120, § 30. The first case reported as having occurred under this territorial statute, which afterwards became the law of the State, is *The State v. Seay*, 3 Stewart, 123. In that case, the indictment was framed under the statute, notwithstanding the phraseology of the act, that the person offending might " *be indicted for horse-stealing or other larceny.*" The offense was regarded by the court as ˙ one of statutory creation ; the principal question raised and relied on by the prisoner was, that the act creating the offense was unconstitutional ; and the judgment of the court was reversed, because the indictment did not charge that the possession of the property in this State was *felonious.*

Subsequently, (in 1841,) a penal code for the State was adopted, the 18th section of the 4th chapter of which was as follows : " Every one who shall inveigle, steal, carry, or entice away any slave, with the view to convert such slave

La Vaul v. The State.

to his own use, or the use of any other person, or to enable such slave to reach some other State or country, where such slave may enjoy freedom, such person shall, on conviction, be punished by confinement in the penitentiary, not less than ten years."—Clay's Digest, 419. By the 57th section of the same chapter of that code, it was provided that the offense of grand larceny should be punished "by imprisonment in the penitentiary, not less than two, nor exceeding five years"; (Clay's Digest, 425;) and by the 25th section it was provided, that "every person who shall fraudulently, or feloniously, steal the property of another in any other State or country, and shall bring the same within this State, may be convicted and punished in the same manner as if such larceny had been committed in this State; and in every such case, such larceny may be charged to have been committed in any county in or through which such stolen property may have been brought."—Clay's Digest, 420.

The cases of *Williams v. The State*, (15 Ala. 259,) *Ham v. The State*, (17 Ala. 188,) and *Murray v. The State*, (18 Ala. 727,) were decided under the influence of the statutes last above mentioned. In each of these cases, all relating to the larceny of slaves, it was held, that the indictment should be framed under the 18th section of the penal code, and not under the 25th section. It was not proper to indict, as at common law, for the offense of grand larceny, because the stealing of a slave had been made a *statutory* offense by the 18th section, with a higher penalty than was prescribed for the offense of grand larceny. "It may, however, be argued", says Dargan, C. J., in *Murray v. The State, (supra,)* "that the indictment might be framed under the 25th section, and the prisoner convicted of grand larceny, and receive the same punishment that would be awarded upon the conviction of this offense. The answer to this argument must be, that the prisoner then would not suffer the same punishment as he would if the original larceny had been committed in this State, and if it had been, he could only be indicted under the 18th section, and could be punished only by or *in accordance with its provisions*. He therefore must be punished as he would have been had the original larceny been committed in Alabama;

and to do this, he must be indicted under the 18th section."

There is a difference in the language between the 25th section of the old penal code and section 3138 of ·our present code. The person offending, under the latter, is not to be *convicted in the same manner* as if the property had been stolen in this State, as is the provision in the 25th section of the former ; but, he is to be *convicted of the offense as defined by the statute.*—*The State v. Ward,* 6 New Hamp. 529. The language of the old code would seem to imply that there was a necessity, while it was in force, for proceeding in the *same manner*—that is, *under the same statute*—as if the offense had been committed in this State.

We feel constrained to hold that the indictment in the present case should have been framed under section 3138 of the Code, which is introductive of an offense not known to the common law. *Williams ·v. The State, Ham v. The State,* and *Murray v. The State, (supra,)* do not militate against the correctness of this conclusion, which is strengthened, as has been correctly contended in the argument for the prisoner, by a reference to other sections of the Code. Sections 3139, 3140, 3141, 3143, 3144, 3145, 3147, and 3148, all provide, that any person who may be convicted of the offenses therein severally defined, shall "be punished as if he had feloniously stolen such property". Forms of indictments framed under most of these sections, which severally define the offenses to which they relate, are given in the Code ; and there is thus afforded a statutory authority requiring the indictment in this case to be framed under the section of the Code creating the offense. It will not, we apprehend, be contended by any one that a conviction could be had under either of said sections, on an indictment in the usual form for larceny.

It follows from what we have said, that the circuit court erred in the charges given covering this question, and in refusing to charge thereon as requested ; and this conclusion renders it unnecessary to notice any other question presented by the record.

The judgment of the circuit court is reversed, and the cause remanded ; and the prisoner will remain in custody until discharged by due course of law.