[Crim. No. 6043.   In Bank.   Aug. 6, 1957.]

THE PEOPLE, Respondent, v. CHARLES BIGELOW
CASE, Appellant.

Cantillon & Cantillon, Michael Cantillon and Paul M. Mc-Donough for Appellant.

Edmund G. Brown, Attorney General, Norman H. Sokolow and Benjamin E. King, Deputy Attorneys General, for Respondent.

SPENCE, J.—Defendant was charged with a violation of section 487, subdivision 1, of the Penal Code. The information alleged that defendant "on or about the 15th day of April, 1955, at and in the County of Los Angeles . . . did wilfully, unlawfully and feloniously take Twelve Hundred Dollars ($1,200), in money . . . the personal property of Carol Louise Heide." Defendant pleaded not guilty. Trial by jury was waived, and the court adjudged defendant guilty and sentenced him to the state prison. He appeals from the judgment of conviction.

Defendant contends: (1) that the evidence was insufficient to sustain his conviction; and (2) that in any event, the trial court had no jurisdiction over any offense which may have been shown by the evidence. We have concluded that these contentions may not be sustained.

Mrs. Carol Louise Heide and defendant became acquainted in 1953 in Anchorage, Alaska. She was married at the time, as was defendant. The two families became friendly and Mrs. Heide went to work for defendant in his studio shop. On February 15, 1955, Mrs. Heide secured a divorce from her husband. She had previously made plane reservations to leave Alaska that day bound for Seattle, Washington. Defendant was then in the process of divorcing his wife. He drove Mrs. Heide to the airport. Shortly before she was to leave, Mrs. Heide became ill and defendant changed her tickets to a later flight that day, arranging at the same time to accompany her.

Due to bad weather, the plane did not land in Seattle as scheduled but proceeded to Portland, Oregon. It was a night flight, and Mrs. Heide and defendant sat in adjacent seats. Mrs. Heide carried in her purse an envelope containing $2,500. Upon arriving at the airport in Portland, Mrs. Heide discovered that the envelope with the money was missing, apparently having been taken sometime as she napped during the trip. She testified that when she announced her loss to defendant, he told her that he had the money and that if she "played along with him," she stood a chance of getting it back. She further testified that she then said, "What if I tell someone?" and he replied, "You better not if you want to see anyone you know again"; that he threatened to use physical force on her, stating that he "knew Judo . . . and could possibly even kill me with a single blow if he wanted to."

Under these threats, Mrs. Heide said that she went along with defendant traveling first to Sacramento and then to Reno, Nevada, where defendant purchased an automobile for $1,500,

using part of her money. After some 10 days in Reno, they drove to Las Vegas, Nevada, and then to Burbank, California, where they both secured employment. During this time they lived together as husband and wife, using assumed names. Mrs. Heide testified that she did not make any complaint to the police with regard to the loss of her money because of her continued fear of defendant.

On April 15, 1955, defendant left their apartment. When he failed to keep an appointment with her later that day, Mrs. Heide attempted to locate him through his place of employment but was told that he "just left" his work at noon and that no more had been heard from him. According to Mrs. Heide, defendant had taken both the car and her money with him. She did not see him again until sometime in January, 1956, when they met on the street in downtown Los Angeles. At that time she told him that she had a warrant out for his arrest but "if you will give me back part of the money anyway, make restitution, I'll drop the charge." She stated that defendant replied that he had the money in his room and that after they started walking together presumably to his lodgings, he suddenly jumped on the flatbed of a passing truck and "got away."

Defendant agreed with Mrs. Heide's general account of their travel and living together until he abruptly left their apartment on April 15, 1955. However, he denied having taken any money from her or that he told her that he did. He further testified that he did not see any money in her purse or otherwise during the plane flight from Anchorage to Portland.

■ Defendant's testimony merely created a conflict, and it was the exclusive province of the court as the trier of the facts to determine which party had told the truth. While Mrs. Heide's story may have involved some unusual circumstances, that would not necessarily render it inherently improbable (*People* v. *Collier*, 111 Cal.App. 215, 226 [295 P. 898]) so as to warrant interference with the trial court's determination of defendant's guilt. (*People* v. *Johnson*, 46 Cal.App.2d 63, 66-67 [115 P.2d 605].) Accordingly, defendant cannot prevail in his challenge of the sufficiency of the evidence to sustain the implied findings that he had stolen the money and had unlawfully brought the stolen money into the county of Los Angeles.

■ There now remains the question of the court's jurisdiction. Defendant contends that he should not have been

charged under Penal Code, section 487, subdivision 1, which merely defines the offense of grand theft, but rather under section 497, which provides that "every person who, *in another state or country* steals . . . the property of another . . . and brings the same into this state, may be convicted and punished in the same manner as if such larceny . . . had been committed in this state." (Emphasis added.) To this point, defendant relies upon the evidence showing that the claimed stealing of Mrs. Heide's money occurred without the state and during their joint plane trip from Anchorage, Alaska, to Portland, Oregon. However, these particulars were but evidentiary matters and it was unnecessary to allege them in the charge against defendant.

Defendant committed a "continuing trespass," which is expressly recognized by our statutes and cases. (Pen. Code, § 497; *People* v. *Black*, 122 Cal. 73, 75 [54 P. 385]; *People* v. *Staples*, 91 Cal. 23, 27 [27 P. 523]; *People* v. *McGowan*, 127 Cal.App. 39, 42 [14 P.2d 1036]; *People* v. *Barnes*, 57 Cal. App. 515, 517-518 [207 P. 695]; *People* v. *Sing*, 42 Cal.App. 385, 393 [183 P. 865].) Moreover, Penal Code, section 27, subdivision 2, includes among the persons who are punishable under the laws of this state the following: "All who commit any offense without this state which, if committed within this state, would be larceny . . . under the laws of this state, and bring the property stolen . . . or any part of it . . . within this state"—recognizing again the principle that the bringing of stolen property within the jurisdiction of this state constitutes an offense within itself.

■ Section 497 of the Penal Code plainly indicates the Legislature's intent to denounce and punish as larceny the bringing into this state of personal property stolen in another country or state. As discussed in *People* v. *Black, supra,* 122 Cal. 73, 74-75, any fair construction of this section leads to the conclusion that the form of the accusation and the penalty to be imposed upon conviction are the same as in the case of larceny committed wholly within this state. Significantly, the section uses the expression "convicted and punished in the same manner as if such larceny . . . had been committed in this state." ■ The word "punished" refers to the penalty; but the word "convicted," in its broad sense as there intended, includes the accusation and trial; and the form of the charge may therefore be the same as for a larceny in this state. In short, section 497 merely *"amplifies the description of the offense of larceny when committed in another state"*

(*People* v. *McGowan, supra,* 127 Cal.App. 39, 42; emphasis added) but the substance of the offense appears in the larceny (theft) statute. (Pen. Code, § 487, subd. 1.) ■ Although it was necessary to show on the trial the original unlawful taking of the money by defendant somewhere outside the state in order to prove the unlawful character of defendant's possession of the money within this state, it was not necessary to allege the original unlawful taking, for that would constitute the allegation of wholly evidentiary matter. (3 Bishop's New Crim. Procedure, 2d ed., § 727, p. 1687; 52 C.J.S. § 92, p. 902.)

■ This view rests on the theory that since the rights of possession and ownership remain in the true owner, every act of the thief in the removal of the property is, in contemplation of law, a new taking and carrying away, a complete larceny in itself. (See cases collected in Anno. 156 A.L.R. 862, 864-871; *People* v. *McGowan, supra,* 127 Cal.App. 39, 42.) There is therefore no question of defendant's conviction here solely because of a completed offense committed without the territorial jurisdiction of this state. Defendant was convicted not merely because of what he did without the state but because of his act of bringing the stolen money into this state. Our statutory law renders defendant liable to prosecution within this state for the offense as though committed wholly in the county into which he brought the stolen money. The trial court therefore had jurisdiction to try and convict him of the offense shown by the evidence under the charge alleged in the information.

The judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and McComb, J., concurred.

Appellant's petition for a rehearing was denied September 4, 1957.