COMMONWEALTH *vs.* RUSSELL F. WHITE.

Middlesex.    December 7, 1970. — December 30, 1970.

Present: TAURO, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Larceny.  Jurisdiction,* Larceny.

The decision in *Commonwealth* v. *Uprichard,* 3 Gray 434, no longer represents the law and will not be followed. [491]

One might be convicted of larceny in Massachusetts if he stole an automobile in Canada and brought it, or caused it to be brought, into Massachusetts.

INDICTMENT found and returned in the Superior Court on December 5, 1969.

A motion to dismiss the indictment was heard by *Lappin,* J.

*Terence M. Troyer,* Legal Assistant to the District Attorney, for the Commonwealth.

*William R. Hall* for the defendant.

CUTTER, J.    White's indictment charged that on August 23, 1969, he "at Lexington, in the County of Middlesex [Massachusetts] . . . did steal one motor vehicle of the property of Luc Savaria." White moved to dismiss the indictment on the ground that the Superior Court lacked jurisdiction.  The motion was allowed.  The Commonwealth appealed under G. L. c. 278, § 28E, inserted by St. 1967, c. 898, § 1.  The parties stipulated, "solely for the

purposes of . . . [the] motion to dismiss," that (1) "the motor vehicle the subject of the larceny alleged . . . was owned by" a resident of Montreal, Canada; (2) the "asportation of the . . . vehicle . . . occurred in Montreal . . . and not in Middlesex County"; and (3) there has been no other asportation than that which occurred in Canada. The Commonwealth asserts in its brief, and the defendant does not seem to dispute,[1] that the motor vehicle, allegedly stolen, was found in Massachusetts.

1. The trial judge obviously dismissed the indictment on the authority of the 1855 decision in *Commonwealth* v. *Uprichard*, 3 Gray 434. It had previously been stated in *Commonwealth* v. *Andrews*, 2 Mass. 14, 22–24, that possession in Massachusetts by a thief of goods stolen by him in New Hampshire and transported to Massachusetts constituted larceny in this Commonwealth. See Perkins, Criminal Law, 220–221.[2] See also *Commonwealth* v. *Cullins*, 1 Mass. 116, 117; *Commonwealth* v. *Rand*, 7 Met. 475–477; *Commonwealth* v. *Holder*, 9 Gray 7; *Commonwealth* v. *White*, 123 Mass. 430, 433; *Commonwealth* v. *Parker*, 165 Mass. 526, 538–540; *Mayo* v. *State*, 258 Atl. 2d (Maine) 269, 270. In the *Uprichard* case, Chief Justice Shaw, speaking for the court, declined (at p. 439) to extend to a theft, originally taking place in the territory of another nation, the principle that a thief who has brought to Massachusetts goods stolen in another State is guilty of larceny here because of the continuing asportation.

When the *Uprichard* case was decided in 1855, there was little authority concerning the prosecution, in a State of the Union, of a thief who had stolen property in another

---

[1] Paragraphs 2 and 3 of the stipulation, which seem somewhat inconsistent with the facts as discussed by the parties, may be discharged as improvidently made if in the Superior Court it appears that the defendant stole the motor vehicle in Montreal and brought it, or caused it to be brought, to Massachusetts.

[2] The *Andrews* case involved a prosecution for receiving stolen goods, not for larceny, but the court's conclusion on this point is not mere dictum. At p. 21, it was assumed that, under the law at that time, "unless there ha[d] been a theft within . . . [this S]tate, there . . . [could] be no receiver of the stolen goods."

country and brought the property into the forum State. In the *Uprichard* case, this court did not follow *State* v. *Bartlett,* 11 Vt. 650, 653–655, which had held that a thief, who had stolen oxen in Canada and taken them to Vermont, could be prosecuted and convicted of larceny in Vermont. The weight of authority, however, now supports the view of the *Bartlett* case and not that of the *Uprichard* case. Most decisions, in some instances on the basis of statutory language, have drawn no distinction between instances (a) where the theft originally took place in another State, and (b) where it took place within another nation's territory.[3] See Anderson, Wharton's Criminal Law & Procedure (1957 ed.) §§ 485, 486, 576; annotation, 156 A. L. R. 862, 877, et seq.[4] See also *Garcia* v. *State,* 151 Tex. Cr. App. 272, 273–274. For cases dealing with thefts in other States, see *People* v. *Case,* 49 Cal. 2d 24, 27–28; *State* v. *Pambianchi,* 139 Conn. 543, 546–547; *State* v. *Palkimas,* 153 Conn. 555, 561–562; *Newlon* v. *Bennett,* 253 Iowa, 555, 557; *State* v. *Vareen,* 223 S. C. 34, 35; *State* v. *Rutledge,* 232 S. C. 223, 227–228; *Lovelace* v. *Commonwealth,* 205 Va. 541, 544–546. Cf. *La Vaul* v. *State,* 40 Ala. 44, 46–48; *Simmons* v. *Commonwealth,* 5 Binney (Pa.) 617; *Stanley* v. *State,* 24 Ohio St. 166, 171–174.

---

[3] See e.g. *People* v. *Barnes,* 57 Cal. App. 515, 517–518; *State* v. *Underwood,* 49 Maine 181, 183–187; *State* v. *Kief,* 12 Mont. 92, 94–101; *People* v. *Burke,* 11 Wend. (N. Y.) 129, 130–131; *State* v. *Morrill,* 68 Vt. 60, 63–65.

[4] The majority cases are supported by the views on criminal jurisdiction underlying Am. Law Inst., Model Penal Code (Tent. draft no. 5, 1956, and proposed official draft, 1962), § 1.03; Restatement 2d: Foreign Relations Law, §§ 18, 37–38; and Harvard Research in Intl. Law, Jurisdiction with respect to Crime, 29 Am. J. Intl. Law, Supp. Part II, 443, 480 (art. 3, "A State has jurisdiction with respect to any crime committed in whole or in part within its territory . . . [which] extends to [a] Any participation outside its territory in a crime committed in whole or in part within its territory; and [b] Any attempt outside its territory to commit a crime in whole or in part within its territory"), and cases collected at p. 491. See George, Extraterritorial Application of Penal Legislation, 64 Mich. L. Rev. 609, 622–623, 626–628; Rotenberg, Extraterritorial Legislative Jurisdiction and the State Criminal Law, 38 Tex. L. Rev. 763, 769–770: See also *Ford* v. *United States,* 273 U. S. 593, 619–625; *Ramey* v. *United States,* 230 F. 2d 171, 172 (5th Cir.); *People* v. *Anonymous,* 52 Misc. 2d (N. Y.) 772, 773 (causing criminal effects in the forum's territory, by a telephone call to a point within the forum, is a criminal act there, even if the call originates outside the country). The Canadian and British statutes are found in Tremeear's Ann. (Canada) Code (6th ed.) part VII, §§ 281, 299; [1968] Stat. (Eliz. 2) c. 60 (Theft Act, 1968), §§ 14, 24.

2. The distinction drawn in the *Uprichard* case (3 Gray 434) between bringing into Massachusetts (a) goods stolen in another nation's territory and (b) goods stolen in another State, is illogical and cannot stand. *First,* the court's decision in that case appears to have been largely based (pp. 440–441) on its reluctance to look to the law in force in Nova Scotia to determine in Massachusetts whether the original taking of goods in Nova Scotia constituted larceny under its law. The basis for the court's reluctance, if indeed it ever was of importance,[5] has now been removed by G. L. (Ter. Ed.) c. 233, § 70, which provides that the courts of the Commonwealth "shall take judicial notice of the law . . . of any state . . . or of a foreign country whenever the same shall be material." See *De Gategno* v. *De Gategno,* 336 Mass. 426, 431. Cf. *Tsacoyeanes* v. *Canadian Pac. Ry.* 339 Mass. 726, 727–728. *Second,* the rule laid down in the *Uprichard* case (even as explained in *Commonwealth* v. *Macloon,* 101 Mass. 1, 5–6) is inconsistent with the necessities of law enforcement today, when an automobile stolen in Montreal can easily be moved by the thief to Boston the same day. The decision is an unnecessary impediment to effective administration of the criminal law.[6]

So far as the *Uprichard* case draws a distinction between goods stolen outside the United States and those stolen in another State, it no longer represents the law and will not be followed.

3. The defendant suggests in his brief, as a basis for supporting the *Uprichard* decision, that prosecution and conviction in Massachusetts on the present indictment would not bar a later indictment in Canada for the same alleged

---

[5] The offence charged, in a case like that before us, is one against the law of Massachusetts, viz. continuing within Massachusetts the asportation of property wrongfully taken from its true owner elsewhere. The proof of acts elsewhere sufficient to constitute larceny if done in Massachusetts ordinarily (cf. e.g. *Banco Nacional de Cuba* v. *Sabbatino,* 376 U. S. 398, 413–420) would suffice to show the original taking to be unlawful.

[6] The *Uprichard* case also is somewhat inconsistent with the doctrine (see the *Macloon* case, *supra,* pp. 5–8) that one who does a criminal act in one jurisdiction is liable for its continuous operation or its effects in another jurisdiction. See authorities collected in fn. 4, *supra.*

theft. The present record presents no question of double jeopardy and the point is not sufficiently argued to require us to consider it. S.J.C. Rule 1:13, 351 Mass. 738. *Lolos* v. *Berlin*, 338 Mass. 10, 13–14. Nevertheless, we point out that, as early as the *Andrews* case, 2 Mass. 14, 22, *supra*, Mr. Justice Sedgwick disposed of this argument summarily.[7] There is no suggestion that White has already been tried for larceny in the Province of Quebec. Thus Massachusetts, in any event, is not precluded from trying him. It apparently has taken jurisdiction first and may now proceed to complete the prosecution. See *Commonwealth* v. *Fuller*, 8 Met. 313, 318. We assume, without deciding, that the alleged larceny in Canada and the continuing asportation in Massachusetts are so far separate offences as to permit two prosecutions. See *Bartkus* v. *Illinois*, 359 U. S. 121, 136–139; *People ex rel. Heflin* v. *Silberglitt*, 2 App. Div. 2d (N. Y.) 767; *People* v. *Lo Cicero*, 17 App. Div. 2d (N. Y.) 31, 32–35. See also *Campbell* v. *State*, 109 Ill. 565, 571–576; *State* v. *Goldfarb*, 97 N. J. L. 489, 491–492; *State* v. *Johnson*, 212 N. C. 566; Am. Law Inst., Model Penal Code (Tent. draft no. 5, 1956) §§ 1.09–1.12, and (proposed official draft, 1962) §§ 1.07–1.11; Anderson, Wharton's Criminal Law & Procedure, § 485, p. 146; notes 59 Harv. L. Rev. 1161, 80 Harv. L. Rev. 1538. Cf. *North Carolina* v. *Pearce*, 395 U. S. 711, 717–726; *Benton* v. *Maryland*, 395 U. S. 784, 793–798; *State* v. *Shimman*, 122 Ohio St. 522, 526–528. We, however, need not determine whether this is the case, in the absence of a prior conviction or acquittal elsewhere based upon some portion of the same alleged sequence of events.

*Order dismissing indictment*
*reversed.*

---

[7] He stated, "It is, however, said that although . . . [one defendant] might be punished in this state, he may still be punished in New Hampshire. And wherefore should he not? For myself I feel no such tenderness for thieves, as to desire that they should not be punished wherever guilty. If they offend against the laws of two states, I am willing they should be punished in both."