COMMONWEALTH vs. ROBERT W. CARROLL
(and a companion case [1]).

Hampden. November 1, 1971. — December 8, 1971.

Present: TAURO, C.J., REARDON, QUIRICO, BRAUCHER, & HENNESSEY, JJ.

*Receiving Stolen Property. Common Enterprise. Jurisdiction,* Receiving
stolen property. *Evidence,* Competency, Of custom, On cross-examina-
tion, Judicial discretion, Relevancy and materiality.

Where two Springfield, Massachusetts, police detectives indicted for
receiving and aiding in the concealment of stolen money received
the money initially in New York City from a thief who had stolen it
from a Springfield restaurant and fled to New York City where he
was apprehended and turned over to the defendants' custody, the
jury was warranted in finding that the unlawful receiving of the
stolen money took place in Massachusetts because the defendants
had lawful custody of the money until they returned to their police
department in Springfield, and that they aided in its concealment
in Springfield. |584-585|

At the trial of two police detectives charged with receiving and aiding
in the concealment of stolen money, there was sufficient evidence
to warrant the inference that both detectives were participants in a
common criminal endeavor despite the ·fact that one detective
never actually possessed any of the stolen money where it appeared
that that detective knew that money taken from the thief by the
other detective was part of the stolen money, that the first detective
was present when the second detective returned part of the stolen
money to the thief, received part of it from a bank in which the
thief had deposited that part, and later tore up the bankbook which
the suspect had used to make the deposit, that the first detective
was present and participated to a limited degree in a conversation
in which the second detective promised the thief leniency and
coöperation at his upcoming trial, and that the first detective
engaged in conduct and made statements consistent with his
participation in the crime charged. |586|

On the record of the trial of two Springfield police detectives charged
with receiving, and aiding in the concealment of, stolen money,
there was no error in permitting G. L. c. 266, § 48, providing that a
police officer who comes into possession of stolen goods is
accountable for them and must ultimately return them to the

---

[1] Commonwealth vs. William J. Lyons, Jr.

rightful owner, to be read to the jury |586-587|; nor was there error in admitting testimony of a Springfield police officer as to the Springfield police practice to impound any money in the possession of a fugitive returned to Massachusetts |587|.

There was no merit in a contention by the defence in a criminal case that conduct of the prosecutor, during cross-examination of a witness called by the defence, in reading to the witness excerpts from a written statement made by the witness was improper as leading the witness. |587-588|

At the trial of two defendants charged with receiving, and aiding in the concealment of, stolen money, where cross-examination of the thief by the defendants tended to show that the thief had not promptly made accusations of illegal conduct against the defendants, there was no error in admitting evidence which, although corroborative of the thief, showed that he had early disclosed the defendant's conduct to a witness and that his accusations were not a recent contrivance. |588|

Where, at the trial of indictments for receiving stolen money from a thief, he, the thief, had already admitted in cross-examination by defence counsel that he had lied on at least five separate prior occasions about major aspects of his present accusations against the defendants and had already testified that he had not disclosed anything to a judge at a time when he pleaded guilty to the theft, it was not an abuse of discretion for the trial judge to exclude a question on cross-examination concerning the thief's response to an inquiry by the judge at the time of his plea about whether any promises had been made to induce him to plead guilty. |589|

Allowing the prosecution at the trial of a criminal case to cross-examine a defence witness about the circumstances of his medical discharge from the military service and his emotional problems while in the military service about five or six years prior to the trial was within the judge's discretion. |589-590|

At the trial of two detectives charged with receiving and aiding in the concealment of stolen money, taken from a thief in their custody, the defence could not prove the state of mind of a District Court judge who presided at a hearing in the thief's case. |590|

INDICTMENTS found and returned in the Superior Court on May 26, 1970.

The cases were tried before *Linscott, J.*

*Samuel A. Marsella* for the defendant William J. Lyons, Jr.

*Efrem A. Gordon,* for the defendant Robert W. Carroll, submitted a brief.

*Matthew J. Ryan,* District Attorney, for the Commonwealth.

HENNESSEY, J.   Each of the two defendants was found guilty by a jury on an indictment charging him with receiving, and aiding in the concealment of, $300 of stolen money. The two indictments were tried together under the provisions of G. L. c. 278, §§ 33A–33G.   The assignments of error which were argued before us concern the judge's denial of the defendants' motions for directed verdicts, and certain rulings of the judge as to admission and exclusion of evidence.

We summarize the evidence.   Frank Purus, an employee of the Post House Restaurant in Springfield, closed the restaurant about 2 A.M. on December 1, 1969, and stole some of the restaurant's cash receipts for the day, which he estimated as being between $3,200 and $3,400.   He went to New York City, and there stayed at a hotel and began to spend some of the stolen money.   He had no money with him except that which he had stolen from the restaurant. While in New York City, he deposited $300 of the stolen money in a savings account at the Chemical Bank & Trust Company (Chemical Bank),[2] intending to make several small deposits of the money in the account in order to avoid suspicion.

The attaché case in which Purus kept most of the money was stolen from him, and was recovered with the assistance of police in New York City.   They became suspicious after seeing the money in the attaché case, questioned Purus, notified the Springfield police, and then arrested Purus. Thereafter Detective Carroll and Detective Lyons of the Springfield police went to New York City.   On December 5, 1969, they took custody of Purus, who waived rendition. The $2,491.45 which had been in the attaché case was turned over to them by the New York police.   Carroll took possession, in an envelope, of $101 and some change, which had been taken from Purus at the time of his arrest. Carroll and Lyons went with Purus and a New York City

---

[2] Sometimes referred to as Chemical Corn Bank.

police officer to the Chemical Bank and there Carroll received the cancelled bankbook of Chemical Bank and $300 cash (in a separate envelope) which had been in that bank. Carroll testified that he was then ninety-nine per cent sure that the $101 and $300 were part of the money stolen from the Post House Restaurant, but listening to Purus convinced him that the money belonged to Purus.

At a bar in the Bronx, Carroll gave one envelope and its contents of about $101 to Purus, saying: "This is yours. You keep it. Just don't mention it to anybody." Purus never saw the $300 again after Carroll had received it in New York City. Carroll, Lyons, and Purus then proceeded to the Connecticut Turnpike toward Springfield. Carroll tore up the Chemical Bank bankbook, and said to Purus, "If you don't say nothing about this money, as far as you're concerned, it don't exist," and, "We'll see what we can do about getting you a suspended sentence or probation, and then we'd stick by you." Carroll also said that they would get a particular lawyer to defend Purus, and would get a particular District Court judge to hear the case. Carroll asked Lyons, "We can do that, can't we?" Lyons replied, "Yes." When they arrived in Springfield, Purus was booked at the police station, and he was told to write a statement and Carroll would tell him what to say. The statement did not mention the $300 or the $101. Lyons was not present during the writing of the statement but both Lyons and Carroll signed the statement. At the police station Purus was searched by the booking officer. At that time he had $67.20 on his person.

Purus was arraigned in the District Court on the day after he was brought back from New York City. Lyons was present, and told Purus to plead not guilty, since the judge they wanted was not sitting on the case. Purus then pleaded not guilty. About a week later Purus was returned to the District Court. The particular lawyer of the "public defenders" office who had been mentioned by Carroll during the trip back from New York approached

Purus at the District Court and told him he had been appointed as his attorney by the court. Purus had never been asked if he wanted the "public defender" to represent him. The lawyer told the clerk of the court that there would be a change of plea to guilty. The lawyer expected to dispose of the case in the District Court. Lyons spoke to the judge and cited the good conduct of Purus on the trip back from New York, and the absence of a prior criminal record, as reasons why the judge should go easy on Purus. Purus had told Lyons and Carroll on their return trip from New York that he did have a criminal record. The judge bound the case over to the Superior Court.

The next day Lyons visited Purus at the jail and said he did not understand why the judge acted as he did on the case. Later, about a week before the case came up in the Superior Court, Lyons visited Purus again at the jail in order to have Purus sign a release of the money so it could be returned to the Post House Restaurant. Lyons told Purus not to worry, that everything would turn out all right. Subsequently, Purus pleaded guilty in the Superior Court, and received a sentence of fifteen months.

Twenty-four hundred and some dollars of the recovered money was returned to the restaurant by Carroll and Lyons.

1. Both Carroll and Lyons argue that directed verdicts should have been ordered because there was no jurisdiction in the Massachusetts court to try these offences. "Criminal laws have no extraterritorial validity. They will not be enforced outside the jurisdiction of the sovereign by whose authority they are enacted." *Commonwealth* v. *Booth*, 266 Mass. 80, 84. *Commonwealth* v. *Parrotta*, 316 Mass. 307, 310. The defendants' first contention is that the evidence does not warrant a conclusion that they ever possessed the stolen money in Massachusetts. This premise fails. The jury were clearly warranted in concluding that the $300 in Carroll's possession in New York was still held by him when he reached Springfield. Further, as discussed elsewhere in this opinion, the evidence was suffi-

cient to prove that Lyons also received and aided in the concealment of the money as a principal with Carroll in a common criminal endeavor.

The further argument is that the receiving of the money occurred in New York or Connecticut, not Massachusetts, and that receiving of stolen goods is not a continuing offence. This argument also fails. In the circumstances, the jury were warranted in finding that the unlawful receiving of the money took place in Massachusetts, because the defendants had lawful custody of the money until they reached Springfield. Further, the gravamen of the offence alleged in the indictments before us, and as contained in the pertinent statute,[3] includes the words that the defendants "did receive and aid in the *concealment* of . . ." (emphasis supplied). The evidence supports an inference that at least the concealment aspect of the crime occurred in Springfield. Therefore, the crime may be punished in Massachusetts. See *Commonwealth* v. *Cullins*, 1 Mass. 116; *Commonwealth* v. *Andrews*, 2 Mass. 14, 22–24. Similarly, we have held that the crime of larceny, which includes the element of asportation, may be punished in Massachusetts if the thief brings the stolen goods into this State after acquiring them outside the jurisdiction. *Commonwealth* v. *White*, 358 Mass. 488. The reasoning in analogous cases is consistent with our conclusion here. *Commonwealth* v. *White*, 123 Mass. 430, 433. *Commonwealth* v. *Welch*, 345 Mass. 366, 370–371. "Acts done outside a jurisdiction, but intended to produce and producing detrimental effects within it, justify a State in punishing the cause of the harm as if he had been present at the effect, if the State should succeed in getting him within its power." *Strassheim* v. *Daily*, 221 U. S. 280, 285.

---

[3] General Laws c. 266, § 60, provides: "Whoever buys, receives or aids in the concealment of stolen or embezzled property, knowing it to have been stolen or embezzled, or whoever with intent to defraud buys, receives or aids in the concealment of property, knowing it to have been obtained from a person by a false pretence of carrying on business and dealing in the ordinary course of trade, shall be punished . . . ."

Lyons also argues that, as to him, aside from the juris-
diction issue, the evidence was insufficient in other respects
to · warrant a guilty verdict against him.   There was no
error.   Competent evidence was presented from which the
jury could properly infer that all material allegations of the
indictments had been proved.   *Commonwealth* v. *Hollis*,
170 Mass. 433, 436.   *Commonwealth* v. *Boris*, 317 Mass. 309,
314–315.   *Commonwealth* v. *Holiday*, 349 Mass. 126, 129.
*Commonwealth* v. *Baron*, 356 Mass. 362, 365–366.   The evi-
dence warranted a finding that both Lyons and Carroll knew
that the $300 was part of the stolen money, and that Lyons
was present when Carroll returned the $101 to Purus and
when Carroll tore up the bankbook.   Lyons was also pres-
ent, and participated to a limited degree in the conversa-
tion in which Carroll promised leniency and coöperation to
Purus.   Finally, Lyons's conduct and statements at the
District Court and the jail were consistent with his participa-
tion in the crime.   It was not necessary for the Common-
wealth to show that Lyons actually possessed the $300 or
any part of it, since there was evidence that Carroll had
the money and the inference was warranted that Carroll
and Lyons were participants in a common criminal en-
deavor.   *Commonwealth* v. *Lussier*, 333 Mass. 83.   *Com-
monwealth* v. *Hamblen*, 352 Mass. 438.

2.  Both defendants assign as error the judge's ruling in
permitting a statute to be read to the jury, viz., G. L. c. 266,
§ 48.[4]  They contend that the jury may have inferred that
criminal responsibility could attach to the defendants by
reason of their mere failure to comply with this statute.   It
was also argued that the statute was not admissible in the
absence of evidence to show that it was customarily ob-
served by Springfield police.   There was no error.   The

---

[4] General Laws c. 266, § 48, provides:  "An officer who arrests a person
charged as principal or accessory in a robbery or larceny shall secure the
property which is alleged to have been stolen, annex a schedule thereof to his
return and be answerable for the same; and, upon conviction of the offender,
it shall be restored to the owner."

statute in substance says no more than that a policeman who comes into possession of stolen goods is accountable for them and must ultimately return them to the owner. These are the inevitable requirements of good order in police administration, and the defendants could not have been harmed by admission of the evidence. Further, the judge gave limiting instructions as to the effect of the statute. The record does not reflect that the defendants made any request for additional or different instructions. Nor did the defendants save any exceptions to the judge's general charge to the jury. The charge was comprehensive and correct as to the elements of the crime and the Commonwealth's burden of proof, and it left no reasonable ground for confusion or misunderstanding by the jurors.

3. Lyons assigns as error the judge's ruling in allowing Deputy Chief McCarthy, who served more than thirty-eight years with the Springfield police department, to testify as to the Springfield police practice in returning fugitives to Massachusetts. The witness stated that, in the case of a fugitive accused of stealing money, the police practice was to impound any money in the possession of the fugitive. Lyons contends that the testimony should have been excluded because there was not sufficient evidence to establish that such a custom or practice existed. There was no error. Evidence as to custom and practice is admissible where, as in this case, it is material. *Commonwealth* v. *Torrealba*, 316 Mass. 24, 30, and cases cited. The testimony of the witness was sufficient to show that such a custom or practice existed.

4. Both defendants assign as error the judge's rulings concerning the manner in which the district attorney, in examining the witness Renee Gaston, used a written statement signed by the witness. The contention is that the statement was used in a grossly leading fashion by reading to the witness various excerpts from the writing. However, the witness was called to the stand by one of the defendants, and the prosecutor was exercising his privilege of cross-examination in a usual manner. The claim that the examination

was unfair because the witness was friendly to the prosecution (*Moody* v. *Rowell,* 17 Pick. 490, 498) is not borne out by the record, which nowhere reflects that this contention was brought to the attention of the judge for his ruling.

The further argument is that the prosecutor, by using the statement of the witness as it related to a conversation she had with Purus, was improperly permitted to introduce statements made by Purus to the witness which were corroborative of most of the important facts concerning Purus's accusations against the defendants. The assertion is that prior consistent statements of Purus were erroneously allowed in evidence. Although our reading of the record leads us to the conclusion that defence counsel appeared to object only to the leading manner of this interrogation, we have nevertheless considered the merits of this argument. There was no error. The objections of defence counsel were general in nature, and therefore the allowance of the testimony was correct if it was admissible for any valid purpose. *Del Visco* v. *General Elec. Co.* 235 Mass. 415, 417. *Irving* v. *Goodimate Co.* 320 Mass. 454, 460. *Costonis* v. *Medford Housing Authy.* 343 Mass. 108, 116. The conversation of the witness with Purus had taken place when Purus was at the District Court. Extensive cross-examination of Purus by defence counsel in the cases before us had been aimed at establishing that Purus made no report, during the early weeks after his arrest, concerning the allegations which later gave rise to the indictments against Carroll and Lyons. In particular, defence questioning had established that Purus had not complained of these matters to the judge in the District Court or, weeks later, to the judge in the Superior Court. In these circumstances, it was permissible to show that Purus had disclosed the events to Miss Gaston as early as the time of his appearance in the District Court, and had not contrived them later. *Commonwealth* v. *Retkovitz,* 222 Mass. 245, 250–253. *Walsh* v. *Wyman Lunch Co.* 244 Mass. 407, 409–410. The defendants did not request the judge to give limiting instructions as to this evidence, and they correctly

do not argue at this time concerning the omission of such instructions.

5. Carroll contends that it was error to exclude a question asked of Purus in cross-examination by Carroll's counsel. This question sought to establish, as a prior inconsistent statement of Purus, that he answered in the negative when, at the time his guilty plea was recorded in the Superior Court, the judge asked him if any promises had been made to him as an inducement for him to plead guilty. The limits of cross-examination ordinarily rest in sound judicial discretion. However, reasonable cross-examination for the purpose of showing falsity of other testimony of the witness as to the main issues of the trial, or bias and prejudice on his part, is a matter of right. *Commonwealth* v. *Russ*, 232 Mass. 58, 79. *Commonwealth* v. *West*, 312 Mass. 438, 440–441. The judge in his discretion may exclude further examination even in these areas, where the inquiry permitted has been sufficient and further proposed inquiry is repetitious. *Commonwealth* v. *Taylor*, 319 Mass. 631, 634. In the cases before us, Purus in his testimony had already admitted that on at least five separate prior occasions he had lied about major aspects of his present testimony. Additionally, Purus had already testified that he had not told the Superior Court judge anything about his present accusations. There was no error here in the judge's limitation of the cross-examination of the witness.

6. Carroll argues that it was error for the judge to permit, over defence objections, the district attorney to cross-examine one Herlihy, a witness called by the defence, concerning the circumstances of a medical discharge from military service and emotional problems of the witness in the military service about five or six years before the present trial. There is no question properly before us because the record discloses that no objection was offered by the defence to this interrogation. However, we have examined the evidence and observe that the rulings of the judge were correct in any event. The extent of inquiry into collateral

matters on cross-examination is within the judge's sound discretion, and in his discretion he could properly permit examination as to the "infirmities" and "mental idiosyncrasies" of the witness, as well as questioning aimed at "injuring his character." *Commonwealth* v. *Sacco,* 255 Mass. 369, 439. *Commonwealth* v. *Nassar,* 351 Mass. 37, 48. The subject matter of the questions was not so remote in time as to require the judge to exclude the inquiry, particularly since the entire examination of the witness brought his emotional problems forward in time to a period within a few months of trial.

7. Carroll also contends that it was error for the judge to exclude a question addressed by defence counsel to Purus's former attorney which, the defence now asserts, tended to explain why the District Court judge left the bench after Lyons had addressed the judge concerning the disposition of Purus's case. Even though prior testimony in the trial had referred to the judge leaving the bench, it was not competent to attempt to prove by this witness the District Court judge's state of mind. We observe also that evidence as to the judge's demeanor and attitude was initially elicited by the attorney for Lyons. After the prosecutor inquired further in this area, in cross-examination, Carroll's attorney attempted to inquire further upon the ground that the prosecutor might later in argument urge upon the jury an inference unfavorable to the defence. The record before us does not disclose that the prosecutor later made any such argument. There was no error in the exclusion of the question proffered by Carroll's attorney.

8. Carroll argues that it was error to exclude a question addressed by defence counsel to Purus concerning whether Purus had concealed the missing $300 in one of the cells at the Hampden County house of correction. The question was properly excluded, since it referred, as read in context, to Purus's privilege of entering certain cells starting in February of 1970. He was first confined at the house of correction on December 5, 1969, at which time he was

searched and did not have the $300 in his possession. What he did or could have done two months later was not material to any issue before the jury.

*Judgments affirmed.*