COMMONWEALTH *vs.* CHARLES PONZI.

Suffolk.   March 4, 1926. — May 28, 1926.

Present: CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Larceny. Evidence,* Competency, Public document, Judicial notice. *Practice, Criminal,* Double jeopardy.

At the trial of an indictment for larceny, it appeared that there had been proceedings in bankruptcy against the defendant, that receivers of his property had been appointed in the bankruptcy court, and that a public accountant, a witness who testified for the Commonwealth, had made a report of a special investigation of the financial activities of the defendant.   The defendant in cross-examination of that witness made inquiries as to the report and desired to be permitted to introduce "that book" in evidence.   The "book" was excluded.   The record did not disclose that the "book" was used to refresh the recollection of the witness or that the defendant limited his offer to parts used by the witness for such a purpose.   There was no contention by the defendant that the "book" tended to contradict the witness.   *Held,* that the "book" properly was excluded.

At the trial above described, authentication of what purported to be the original "Universal Postal Treaty of Rome, Italy, 1906," through testimony by the superintendent of foreign mails of the United States Post Office Department was *held* to be sufficient to make it proper to introduce the document in evidence.

Courts of the United States recognize the seals and signatures of the chief magistrates of the heads of departments and the principal officers of the government, State and National, and will take judicial notice of the persons who from time to time preside over public offices.

At the trial above described, it appeared that the defendant had pleaded guilty to an indictment in the United States court for violation of § 215 of the Federal Penal Code of 1910, use of the mails in pursuance of a scheme to defraud, and he offered to prove that he did so because of the

advice of one who was then an attorney at law. The evidence was excluded. *Held*, that the exclusion was proper since, even if admitted, it would not establish innocence of the defendant of the offence charged, nor prevent the introduction of the record of the Federal court, should the defendant elect to testify in his own behalf on the indictments for larceny.

Violation of § 215 of the Federal Penal Code of 1910 in the use of the mails in pursuance of a scheme to defraud, to which the defendant in the indictment above described had pleaded guilty and upon which he had been sentenced in the Federal court, was *held* to be a different crime from the crime of conspiracy to commit larceny, from the crime of larceny, and from the crime of being an accessory before the fact to crime of larceny, which were the substance of the indictment in the courts of this Commonwealth, and the defendant therefore was not being subjected to double jeopardy by the indictment in the courts of this Commonwealth.

INDICTMENT, found and returned on September 11, 1920, charging the defendant with larceny.

Proceedings in the Superior Court are described in the opinion. The trial in February, 1925, was before *Sisk*, J. Material evidence and exceptions by the defendant, who tried the case *pro se*, are described in the opinion. The defendant was found guilty and alleged exceptions.

*W. H. Lewis*, for the defendant.

*M. Caro*, Special Assistant District Attorney, for the Commonwealth.

PIERCE, J. On September 11, 1920, the grand jury for the county of Suffolk returned twenty-two indictments against the defendant Charles Ponzi: eleven charging him with larceny in various counts, ten with being accessory before the fact of larceny, and one with conspiracy to steal. On July 14, 1922, Ponzi moved that the cases be set down for trial. The record does not show the action of the court on the motion, nor does it show that any order was made that all cases were to be tried at one time. On October 23, 1922, the defendant was placed at the bar for trial on twelve of the twenty-two indictments. Although Ponzi protested and insisted upon a trial on all the indictments, the record does not disclose that he based his objection upon or called the attention of the presiding judge to an order of another judge, alleged by Ponzi to be made in response to his motion that all cases be set down for trial, which alleged order was to the

effect that all the indictments should be tried at one and the same time.

At the trial of the twelve indictments, the jury returned verdicts of not guilty, on December 1, 1922. On November 6, 1924, the defendant was placed at bar for trial upon five of the indictments untried. On November 20, 1924, the jury disagreed on four of these indictments, numbered 21, 22, 23 and 24, and the judge directed a verdict of not guilty on the remaining indictment numbered 20. On February 18, 1925, the defendant was again set at bar for trial on the indictments numbered 21, 22, 23 and 24 on which the jury had disagreed, said indictments being newly numbered 9, 10, 11 and 12. Verdicts of guilty on all counts of all indictments were returned by the jury on February 26, 1925. On July 11, 1925, the Commonwealth moved for sentence, and indictments 9, 10, and 11 were placed on file. Indictment 12, in three counts, charges Ponzi with the larceny of the property of one Bodenstab, as follows: count one, larceny of $1,000 on July 8, 1920; count two, larceny of $600 on July 16, 1920; and count three, larceny of $400 on July 20, 1920. On indictment numbered 12, the defendant was adjudged a common and notorious thief under G. L. c. 266, § 40, and was sentenced to not less than seven nor more than nine years in State prison.

The first exception shown by the record relates to the testimony of a public accountant, one Charles F. Rittenhouse, called by the Commonwealth. Ponzi, who appeared *pro se*, on cross-examination asked the witness concerning a report made by the witness for the receivers in bankruptcy of the estate of Charles Ponzi, entitled "Report on Special Investigation of the Financial Activities of Charles Ponzi," and desired to be permitted to introduce "that book" in evidence. Ponzi made no claim at the trial, and makes none in his brief, that "the book" if introduced in evidence would contradict in any way the testimony of Rittenhouse. The record does not disclose that "the book" was used to refresh the recollection of the witness, but if it was so used the right of the defendant would be limited to an inspection by the jury of only so much of it as the witness testified

refreshed his recollection. *Commonwealth* v. *Haley*, 13 Allen, 587. *Commonwealth* v. *Jeffs*, 132 Mass. 5, 7. *Capodilupo* v. *F. W. Stock & Sons*, 237 Mass. 550. "The book" was excluded rightly.

The next exception deals with the introduction of what purported to be the original "Universal Postal Treaty of Rome, Italy, 1906." By the Constitution of the United States, "all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every State shall be bound thereby, any thing in the Constitution or laws of any State to the contrary notwithstanding." Art. 6, U. S. Const. The authority to negotiate the treaty in question is created by the U. S. Rev. Sts. §§ 398, 399. "For the purpose of making better postal arrangements with foreign countries, or to counteract their adverse measures affecting our postal intercourse with them, the Postmaster-General, by and with the advice and consent of the President, may negotiate and conclude postal treaties or conventions, and may reduce or increase the rates of postage on mail-matter conveyed between the United States and foreign countries."

The treaty offered in evidence was produced by one Edward Sands, who testified "he was the superintendent of the foreign mails of the United States Post Office Department, and had custody of certain government documents, to wit: Postal treaties which are called conventions that 'we make with foreign countries, and under which we conduct our postal business,' and that he had brought with him from Washington the 'Universal Postal Treaty of Rome, Italy, 1906.'" He further testified that the document he produced was the original, and he identified thereon the signatures of Theodore Roosevelt, once President of the United States, the signature of Elihu Root, once Secretary of State, and the signature of George Cortelyou, Postmaster General of the United States in 1906. He further testified that the Universal Postal Congress, held in Rome, was a diplomatic proceeding, and all actions of the convention are certified by the foreign relations officer to all countries concerned. The witness indicated the seal and called at-

tention to the certification of the foreign relations officer on the seal, but testified he was not familiar with the signature thereon; that the foreign relations officer had transmitted the convention "to the State Italian Legation in Washington," which transferred it to the State Department and was in turn transmitted from the State Department to the Post Office Department, the Post Office Department had it signed by the Postmaster General, and the State Department secured the "signature of the President of the United States."

Courts of the United States recognize the seals and signatures of the chief magistrate of the heads of departments and the principal officers of the government, State and national, and will take judicial notice of the persons who from time to time preside over public office. *York & Maryland Line Railroad* v. *Winans*, 17 How. 30, 41. *Laffan* v. *United States*, 122 Fed. Rep. 333, 335. *State* v. *Gleason*, 12 Fla. 190, 231. See cases collected in Jones, Ev. §§ 111, 112. The evidence introduced established a *prima facie* case and no further affirmative evidence was necessary to prove either that the treaty was signed by a representative of the Italian Government or that it was ratified by the Senate of the United States, as the defendant contends should have been done, before it was received in evidence. The record leaves it somewhat in doubt whether the exception taken to the admission of the treaty in evidence was not waived at the trial. The question raised thereby has been considered on the footing that the defendant did not intend to waive his general exceptions to the admission of the evidence. The evidence discloses no exception saved to the use in evidence of the treaty and we are not permitted to infer that any issue of facts was thereby raised which was prejudicial to the defendant.

The offer of the defendant, to prove through one Daniel H. Coakley that he (Ponzi) pleaded guilty to an indictment in the United States court for violation of § 215 of the Federal Penal Code of 1910 — use of the mails in pursuance of a scheme to defraud — because of the advice of Coakley, was refused rightly. Such evidence, if received, would not establish the innocence of Ponzi of the offence charged, nor

prevent the introduction of the record of the Federal Court should Ponzi elect to testify in his own behalf in the indictments of larceny. *Commonwealth* v. *Gallagher*, 126 Mass. 54. *Commonwealth* v. *Galligan*, 155 Mass. 54.

It is evident there was no double jeopardy: the larcenies were from different people at different times. "The offense of conspiracy was not merged in the specific crimes afterwards committed in pursuance thereof, although the conspiracy was only a misdemeanor and the subsequent crimes were felonies." *Commonwealth* v. *Stuart*, 207 Mass. 563, 571. *Commonwealth* v. *Marsino*, 252 Mass. 224. There was no issue of fact on this question for the jury. Moreover, no exception appears by the record to have been taken or saved to the refusal of the trial judge to allow a "special plea of double jeopardy and acquittal." The offence of using the mail in pursuance of a scheme to defraud to which Ponzi pleaded guilty and was sentenced in the Federal Court was a different crime from the crime of conspiracy to commit larceny, from the crimes of larceny, and from the crimes of being an accessory before the fact to crimes of larceny. These were offences against the State and the United States and were punishable in each jurisdiction under its laws. *Sexton* v. *California*, 189 U. S. 319, 323, 324. *United States* v. *Marigold*, 9 How. 560, 569. *Moore* v. *Illinois*, 14 How. 13, 19. *United States* v. *Cruikshank*, 92 U. S. 542, 550. *Crossley* v. *California*, 168 U. S. 640, 641. *Gilbert* v. *Minnesota*, 254 U. S. 325. *United States* v. *Lanza*, 260 U. S. 377, 382.

The motion in arrest of judgment presents no question of law or merit.

*Exceptions overruled.*
*Appeal dismissed.*