COMMONWEALTH *vs.* RICHARD A. CEPULONIS.

Middlesex. January 3, 1978. — February 24, 1978.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & ABRAMS, JJ.

*Practice, Criminal,* Double jeopardy, Duplicitous convictions, Trial of defendants together, Comment by prosecutor. *Constitutional Law,* Double jeopardy. *Evidence,* Other offense.

There is no constitutional bar to a State prosecution which is precisely duplicative of a prior Federal trial. [490-495]

Prosecution of a defendant under G. L. c. 269, § 10 (c), for unlicensed possession of a machine gun was not duplicative of a Federal prosecution under 26 U.S.C. § 5861 (d) for possession of an unregistered firearm. [495-497]

In the case of a defendant who was prosecuted in a Federal court for offenses committed in the course of a bank robbery and in a State court for distinct offenses perpetrated during the robbery, this court declined to adopt a "same transaction" rule by which trial and conviction of an offense would preclude trial of other offenses committed in the course of the criminal episode. [497]

Where evidence concerning a bank robbery was relevant to certain other crimes committed in the course of the robbery, there was no error at the trial of the defendant for the other crimes in admitting evidence relating to the robbery. [498-499]

A judge did not abuse his discretion in refusing to sever the trial of a defendant who rested on the prosecution's case from that of a codefendant who took the stand in his own defense. [499]

At a criminal trial, certain statements of the prosecutor were not so prejudicial to the defendant as to require a mistrial. [499-501]

INDICTMENTS found and returned in the Superior Court on February 12, 1974.

The cases were tried before *Mazzone,* J.

The Supreme Judicial Court granted a request for direct appellate review.

*Robert W. Harrington (Judith E. Diamond* with him) for the defendant.

*Susan C. Mormino,* Assistant District Attorney, for the Commonwealth.

KAPLAN, J. At trial in the Superior Court, Middlesex County, of five indictments, to be specified below, the following appeared. The crimes stemmed from a robbery on August 9, 1973 — not directly charged in these five indictments — in which the defendant Cepulonis with Frank Lovell (a codefendant) and James Guimond (a Commonwealth witness), all masked and armed with machine guns, held up a branch of the Suburban National Bank in Woburn, fired their guns to intimidate the customers and employees of the bank, and stole approximately $17,000. A witness, Dorothy Juliano, had seen the three men driving up in a yellow Mustang automobile and, suspecting that a robbery was in progress, telephoned the police. Officer John P. Gibbons, in a cruiser, spotted the car as it left the scene, and gave chase. He was met by gunfire from two men riding in the car, later identified as the defendant and Lovell, one firing through the rear window and the other hanging out a side window. At one point in the chase a car driven by Ann Moselunas came between the Mustang and Gibbons. Moselunas was wounded by shots from the Mustang smashing through the windshield of her car. Finally the robbers eluded their single pursuer. The Mustang, a stolen car, was later found abandoned.

The defendant's involvement in the criminal events was proved impressively by testimony of Federal agents and State police who described the clues and how they followed them to close on the defendant and Lovell and accomplish their arrest in New York in September, 1973. Guimond as a participant in many of the events gave compelling testimony and the Commonwealth's case was further buttressed by Richard Vidito, at whose apartment the robbers met the day before the robbery and to which the defendant and Lovell returned the day of the crime.

To trace the several prosecutions following upon the robbery: The defendant was convicted in February, 1974, in the United States District Court for the Eastern District of

New York of the knowing possession of an unregistered firearm, to wit, a machine gun, in violation of 26 U.S.C. § 5861(d) (1970), and was sentenced to five years' imprisonment. In October, 1974, he and Lovell were found guilty in the United States District Court for Massachusetts of robbing a federally-insured bank while assaulting and putting in jeopardy the bank employees by use of dangerous weapons (18 U.S.C. § 2113[a] and [d] [1970]), and received a sentence of twenty-five years, concurrent with the previous sentence.

Also in February, 1974, the Middlesex County grand jury returned seven indictments against the defendant and James Lovell for the offenses of armed robbery (G. L. c. 265, § 17); confining or putting in fear for the purpose of stealing (G. L. c. 265, § 21); assault with intent to murder Gibbons (G. L. c. 265, § 15); a like assault and also assault with a dangerous weapon (G. L. c. 265, § 15B) as to Moselunas; concealment of a stolen motor vehicle (G. L. c. 266, § 28); and unlawful possession of a machine gun (G. L. c. 269, § 10).

The defendants moved before trial to dismiss all the indictments on the ground of former jeopardy. After a hearing in January, 1975, a judge of the Superior Court dismissed the indictments for armed robbery and confining. Trial proceeded on the remaining indictments. The defendants were found guilty of all the crimes there charged, and from the judgments of conviction[1] they severally appealed under G. L. c. 278, §§ 33A-33G. We took Cepulonis's appeal for direct review and decide that alone in this opinion. This defendant renews his claim of former jeopardy and presses a number of other points arising in the course of trial. We affirm his convictions.

---

[1] The judge sentenced Cepulonis to forty to fifty years' imprisonment for possession of the machine gun, to be served from and after expiration of the Federal sentences. On the other charges, he sentenced Cepulonis to lesser terms to be served concurrently with the weapons sentence: eighteen to twenty years for each armed assault with intent to murder, and eight to ten years each for assault with a dangerous weapon and concealment of a stolen motor vehicle.

1. *Former jeopardy.* The defendant contends that the Massachusetts charges of which he has been convicted should have been held barred by reason of the prior Federal prosecution (whether for the bank robbery, possession of the weapon, or both, he does not say). The answer is that this contention (i) cannot be made successfully as a matter of Federal constitutional right, and (ii) fails on the present facts if we apply — although without constitutional compulsion — a rule with respect to successive Federal and State prosecutions similar to the "same evidence" test that this court has regularly applied to repetitive prosecutions within the Commonwealth.

Under still reigning authority of the Supreme Court of the United States, there is nothing unconstitutional about a State prosecution that is precisely duplicative of a prior Federal trial; and the converse is also true. These results follow from a "two-sovereignty principle" (*Bartkus* v. *Illinois,* 359 U.S. 121, 134 [1959] [Frankfurter, J.] [five to four decision]): the United States and the several States are conceived to have distinct competencies so that the action of one sovereign does not eliminate or supersede the authority of the other, and is not relevant in determining whether an individual liberty has been invaded by that other. *Bartkus* v. *Illinois, supra* (subsequent State trial). *Abbate* v. *United States,* 359 U.S. 187 (1959) (subsequent Federal trial) (six to three decision).

We need not describe fully the large and well known critical commentary which argues for some constitutional limit on repetitive Federal-State trials and punishments. The *Bartkus* position has been attacked as unhistorical, and also as morally wrong.[2] (On the latter point, see especially

[2] See, e.g., Grant, Successive Prosecutions by State and Nation: Common Law and British Empire Comparisons, 4 U.C.L.A.L. Rev. 1 (1956); Harrison, Federalism and Double Jeopardy: A Study in the Frustration of Human Rights, 17 U. Miami L. Rev. 306 (1963); Pontikes, Dual Sovereignty and Double Jeopardy: A Critique of Bartkus v. Illinois and Abbate v. United States, 14 W. Res. L. Rev. 700 (1963); Note, Double Prosecution by State and Federal Governments: Another Exercise in Federalism, 80 Harv. L. Rev. 1538 (1967).

Black, J., dissenting in *Bartkus, supra* at 150-164.)[3] And some attritions of the two-sovereignty notion are pointed to that might influence the constitutional law of double jeopardy. Thus it is no longer the case that the Federal courts will admit evidence illegally seized by State authorities (*Elkins* v. *United States,* 364 U.S. 206 [1960]), and a State may not compel testimony under a promise of immunity which does not protect against Federal prosecution (*Murphy* v. *Waterfront Comm'n,* 378 U.S. 52 [1964]). See Schaefer, Unresolved Issues in the Law of Double Jeopardy: *Waller* and *Ashe,* 58 Calif. L. Rev. 391, 401 (1970).

Notwithstanding its possible infirmities, the *Bartkus-Abbate* view is the present law of the Supreme Court, and recognized as such.[4] We look to that Court for interpretation of the double-jeopardy guaranty in so far as it now binds us under the Fourteenth Amendment (*Benton* v. *Maryland,* 395 U.S. 784 [1969]), and in that respect we of course accept *Bartkus.* And if our own Declaration of Rights is taken to include a double-jeopardy guaranty (a proposition, as it happens, never explicitly adopted[5]), we would not be inclined at present, on these facts, to interpret our guaranty more generously than *Bartkus* to impose constitu-

---

[3] "The Court apparently takes the position that a second trial for the same act is somehow less offensive if one of the trials is conducted by the Federal Government and the other by a State. Looked at from the standpoint of the individual who is being prosecuted, this notion is too subtle for me to grasp. If double punishment is what is feared, it hurts no less for two 'Sovereigns' to inflict it than for one. If danger to the innocent is emphasized, that danger is surely no less when the power of State and Federal Governments is brought to bear on one man in two trials, than when one of these 'Sovereigns' proceeds alone. In each case, inescapably, a man is forced to face danger twice for the same conduct." 359 U.S. at 155.

[4] See, e.g., *United States* v. *Corbo,* 555 F.2d 1279, 1281 (5th Cir. 1977); *Turley* v. *Wyrick,* 554 F.2d 840 (8th Cir. 1977) (prior Federal acquittal of bank robbery); *Brown* v. *United States,* 551 F.2d 619 (5th Cir. 1977); *Martin* v. *Rose,* 481 F.2d 658 (6th Cir.), cert. denied, 414 U.S. 876 (1973) (Federal acquittal followed by State bank robbery conviction); *State* v. *Castonguay,* 240 A.2d 747 (Me. 1968) (subsequent State bank robbery prosecution); *Reynolds* v. *State,* 548 S.W.2d 733 (Tex. Crim. App. 1977). See also Annot., 18 A.L.R. Fed. 393 (1974).

[5] See, e.g., *Commonwealth* v. *McCan,* 277 Mass. 199, 201 (1931).

tional limits on State prosecutions following Federal convictions or acquittals of similar offenses. But cf. *People* v. *Cooper*, 398 Mich. 450 (1976).

But there is a great difference between constitutionalizing a restriction, and voluntarily applying a common sense limitation, whether by judicial, prosecutorial, or legislative decision. This the Supreme Court opinions not only do not forbid, but actively encourage. See *Bartkus, supra* at 138-139. And this is the path that has been followed federally, and by many States.

The *Bartkus* and *Abbate* cases were decided on March 30, 1959. On April 6, 1959, the Attorney General issued a directive to United States Attorneys stating that "[i]t is our duty to observe not only the rulings of the Court but the spirit of the rulings as well." The Attorney General added that "[a]fter a state prosecution there should be no federal trial for the same act or acts unless the reasons are compelling. . . . [N]o federal case should be tried when there has already been a state prosecution for substantially the same act or acts" without the approval of an assistant attorney general after consultation with the Attorney General. Department of Justice Press Release, April 6, 1959, 27 U.S.L.W. 2509 (1959). This has remained the policy of the Department of Justice. On a few occasions Federal prosecutions have been initiated mistakenly, and the government has then sought dismissals to conform to the policy of the directive. In such cases the Supreme Court has supported the policy "to protect the individual from unfairness associated with needless multiple prosecutions." *Rinaldi* v. *United States*, 434 U.S. 22 (1977) (per curiam). See cases cited *id.* at 25 n.8, and *Petite* v. *United States*, 361 U.S. 529 (1960).

By the time of the *Bartkus* decision a considerable number of States had already enacted statutes intended to eliminate redundant State prosecutions following Federal trials,[6]

---

[6] See citations collected at American Law Institute, Double Jeopardy 126-127 (1935), and Model Penal Code § 1.11, at 60-61, Comment (Tent. Draft No. 5, 1956).

and more States have done so since.[7] The American Law Institute's Model Penal Code proposes legislation on this line at § 1.10 (Proposed Official Draft 1962). Among the States with such laws are California,[8] Illinois,[9] and New York.[10] The Supreme Court of Michigan has reached a like result as a matter of State constitutional law, *People* v. *Cooper, supra,* while Pennsylvania has done so without constitutional reference, *Commonwealth* v. *Mills,* 447 Pa. 163 (1971). Some State courts have overlooked the invitation of *Bartkus,* or have declined it;[11] others have not had occasion to respond.

Owing, perhaps, to the sound exercise of discretion by prosecutors, this court has not had to decide squarely a jeopardy question where the Commonwealth has prosecuted an offense already tried in another competent jurisdiction. In speaking to those situations we have not invoked a two-sovereignty concept; rather we have approached them on much the same footing as cases in which the former prosecution was in-State. See *Commonwealth* v. *Fuller,* 8 Met. 313, 317-318 (1844); *Commonwealth* v. *Peters,* 12 Met. 387, 396-397 (1847) (Shaw, C.J.); *Commonwealth* v. *Ponzi,* 256 Mass. 159, 164 (1926); *Commonwealth* v. *White,* 358 Mass. 488, 492 (1970). See also *Commonwealth* v. *Barry,* 116 Mass. 1, 6 (1874); *Commonwealth* v. *McCan,* 277 Mass.

---

[7] See Ark. Stat. Ann. § 43-1224; Ga. Code Ann. § 26-507(c).

[8] Cal. Penal Code Ann. § 656 (Deering). See *People* v. *Belcher,* 11 Cal. 3d 91 (1974).

[9] Ill. Rev. Stat. c. 38, § 3-4 (c).

[10] New York Crim. Proc. Law § 40.20 (McKinney). See *Abraham* v. *Supreme Court of Bronx County,* 37 N.Y.2d 560 (1975).

[11] See, e.g., *State* v. *Tiche,* 33 Conn. Supp. 51 (1976); *State* v. *Castonguay,* 240 A.2d 747 (Me. 1968); *Stathes* v. *State,* 29 Md. App. 474, 481 (1975), appeal dismissed, 429 U.S. 803 (1976); *State* v. *Glover,* 500 S.W. 2d 271, 274 (Mo. App. 1973); *State* v. *Pope,* 190 Neb. 689 (1973); *State* v. *Cooper,* 54 N.J. 330 (1969); *State* v. *Rogers,* 90 N.M. 604 (1977); *State* v. *Forbes,* 348 So. 2d 983, 988 (La. 1977).

199, 201 (1931).[12] We think we should take that course here. Thus we would apply to dual jurisdiction cases the substance of the "same evidence" test currently used by us and expounded in *Commonwealth* v. *Gallarelli,* 372 Mass. 573, 577 (1977); *Kuklis* v. *Commonwealth,* 361 Mass. 302, 306 (1972); *Morey* v. *Commonwealth,* 108 Mass. 433, 434 (1871).[13] We observe, however, that this test or rule may require some modulation when applied to a case in which the

---

[12] *Fuller* stated that only one prosecution would be allowed where Massachusetts has concurrent jurisdiction to punish Federal crimes. In *Peters, Ponzi,* and *White,* the court rejected double jeopardy arguments: in *Peters* because the Federal court had lacked subject matter jurisdiction (and had presumably acquitted the defendant for that reason), and in *Ponzi* and *White* because the other jurisdiction's prosecutions could only have been for different crimes under the "same evidence" test.

We do not think inconsistent the statements to be found in *Commonwealth* v. *Andrews,* 2 Mass. 14 (1806), and *Commonwealth* v. *Nickerson,* 236 Mass. 281 (1920). One of the Justices writing in *Andrews* remarked that "[i]f [thieves] offend against the laws of two states, I am willing they should be punished in both." 2 Mass. at 22. The reference, however, was to a theft in New Hampshire followed by fraudulent possession in Massachusetts, which the Justice conceived as separate crimes. See also *id.* at 24 ("every moment's felonious possession is, in contemplation of the law, a new taking"). Although *Bartkus* cited *Nickerson* as denying that Massachusetts would bar a second prosecution, 359 U.S. at 135 n.24, the case did not so hold. The quotations in *Nickerson* from Federal cases contemplating double punishment, 236 Mass. at 297-300, were presented only in the course of demonstrating that Massachusetts was not disabled from punishing alcoholic beverage offenses by the enactment of national prohibition laws: the possibility of a successive Federal prosecution was considered inadequate proof that State legislation had been preempted.

[13] "A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Morey,* 108 Mass. at 434. In *Gallarelli* we added that a showing of attempted prosecutorial harassment might cause a court to bar a second suit. 372 Mass. at 579. There is no evidence of such conduct in this case.

Statutory schemes applying a similar test for the Federal-State situation include those of California, see Cal. Penal Code § 656 (Deering); *People* v. *Belcher,* 11 Cal. 3d 91 (1974); Georgia, Ga. Code § 26-507(c); Illinois, Ill. Rev. Stat. c. 38, § 3-4 (c); and Virginia, Va. Code § 19.2-294; *Epps* v. *Commonwealth,* 216 Va. 150 (1975). Liberalized variations of this "same evidence" standard apply in Arkansas, Ark. Stat. Ann. § 43-1224, and New York, New York Crim. Proc. Law (McKinney) § 40.20.

prior prosecution occurred in a Federal court.[14] On the one hand, a mere reference in a Federal criminal statute to a Federal jurisdictional contact (e.g., that a bank was federally insured) may well be disregarded in matching the elements of that statute with those of the State statute under the "same evidence" regimen. *People* v. *Belcher,* 11 Cal. 3d 91, 100 (1974). *People* v. *Cooper,* 398 Mich. 450, 461 (1976). Ark. Stat. Ann. § 43-1224.2(b) (Cum. Supp. 1975). On the other hand, in particular cases Federal prosecution for a given crime may conceivably not preclude later State prosecution for a crime which would embrace the substance of the former as a "lesser included" offense; and the fact that a Federal crime is punishable much more lightly than the parallel State crime may justify a subsequent prosecution by the State.[15] (It will be understood that this opinion can be only suggestive on these matters, and that no rule can work satisfactorily without the willing cooperation of fair-minded prosecutors.)

To apply the "same evidence" precept to the present case: We surmise that it was on that basis of comparison of the elements of our statute with 18 U.S.C. § 2113(a) and (d) (1970) that the judge of the Superior Court dismissed the indictments for robbery and confining. He reached the right result.

There is no such congruence of the Federal and State charges regarding a machine gun as to require reversal of the subsequent State conviction here under appeal. Each charge comprises possession, but each requires proof of a culpable omission by the defendant which the other does

[14] In principle, protection from former jeopardy should also be at work where the initial prosecution was in a sister State or foreign country. See *Commonwealth* v. *White,* 358 Mass. 488, 492 (1970). As in the Federal-State context, special circumstances may dictate modifications of the rule.

[15] See *Bartkus* v. *Illinois,* 359 U.S. at 137; *Abbate* v. *United States,* 359 U.S. at 195.

Another jurisdiction's laxity in prosecution might also be a circumstance prompting us to allow a second prosecution in Massachusetts. See *Bartkus* v. *Illinois,* 359 U.S. at 161 (Black, J., dissenting); Note, 80 Harv. L. Rev. at 1551-1554, note 2, *supra.*

not, and it is thus possible to violate one statute without transgressing the other. The defendant violated G. L. c. 269, § 10 (c), by possessing a machine gun (in Massachusetts) without having obtained a license to carry one under G. L. c. 140, § 131.[16] The latter law licenses individuals, but does not register the weapons they later acquire. Under the Federal statute, by contrast, the weapon must be registered by the transferor to render legal the transferee's (defendant's) possession (charged as in New York); it would have been impossible for the transferee to register the weapon himself. Cf. *United States* v. *Freed,* 401 U.S. 601, 604 (1971). Compliance with the Federal registration law leaves open the possibility that possession of the weapon is a State law violation. *United States* v. *Freed, supra* at 610 (Brennan, J., concurring) (hand grenades federally registered, but possession in State illegal). The differences in the statutes are major: the State statute scrutinizes the character of those who possess guns and stands in with a Federal statute concerned with checking the traffic in dangerous weapons. We think the crimes are not duplicative. This is quite apart from the circumstance that the Federal offense carries at most a sentence of ten years, 26 U.S.C. § 5871 (1970), while the State offense is punishable by life imprisonment, G. L. c. 269, § 10. Next, the three indictments for the attacks on Gibbons and Moselunas are clear of the Federal bank robbery indictment which charged assault on the employees at the bank and not the later assaults during the escape.[17] (We

---

[16] General Laws c. 269, § 10 (c), as amended through St. 1975, c. 585, § 1, reads in part: "Whoever, except as provided by law, possesses a . . . machine gun, as defined in section one hundred and twenty-one of chapter one hundred and forty, without permission under section one hundred and thirty-one of said chapter . . . shall be punished by imprisonment in the state prison for life or for any term of years . . . ."

[17] Cf. *Commonwealth* v. *Hoffman,* 121 Mass. 369 (1876); *Commonwealth* v. *Andrews,* 2 Mass. 409 (1807); *Moton* v. *Swenson,* 488 F.2d 1060 (8th Cir. 1973), cert. denied, 417 U.S. 957 (1974); *People* v. *Carlson,* 37 Cal. App. 3d 349, 352 (1974); *State* v. *Smith,* 491 S.W.2d 257 (Mo. 1973); Model Penal Code § 1.07 (Proposed Official Draft 1962). Cf. *Ashe* v. *Swenson,* 397 U.S. 436 (1970) (acquittal in a multivictim situation may collaterally estop subsequent trials).

add that there is no proscribed duplication as between the two State charges involving Moselunas, as shown by *Salemme* v. *Commonwealth*, 370 Mass. 421, 423 [1976]). The charge of concealment of a stolen motor vehicle is also separate from the Federal charges.

The defendant's brief in fact concedes that "the indictments here at issue appear to charge wholly distinct offenses from those previously tried in the federal courts," so that there is no attempted argument under *Gallarelli* and associated cases. Rather the defendant asks us to overrule those cases and apply a "same transaction" rule — that trial and conviction of an offense preclude trial of other offenses committed in the course of the criminal episode. In *Gallarelli* the court rejected a transactional view even as applied to repetitious trials in this jurisdiction of crimes committed in a single episode.[18] Far less appealing is such a view when it is sought to be applied to trials in different jurisdictions, for it would yield the untoward result that a criminal violating different Federal and State laws in a natural sequence called an episode must necessarily escape punishment for one or more of his crimes. The point has been perceived by those who sponsor a transactional rule for the single-jurisdiction situation.[19]

---

[18] 372 Mass. at 578 (1977). Two Justices, Kaplan and Liacos, JJ., expressed dissatisfaction in *Gallarelli* with the "same evidence" approach to govern the permitted joinder of offenses for trial, but their view has not prevailed. See the concurring opinion at 580.

[19] See, e.g., *People* v. *Belcher*, 11 Cal. 3d 91, 98 (1974); *People* v. *Cooper*, 398 Mich. 450 (1976). Similarly, the Model Penal Code demands in the usual case joinder of all offenses arising from a single criminal episode, but in the dual jurisdiction setting proposes a liberalized version of the "same evidence" standard. Thus § 1.10 (Proposed Official Draft 1962) states in pertinent part: "When conduct constitutes an offense within the concurrent jurisdiction of this State and of the United States or another State, a prosecution in any such other jurisdiction is a bar to a subsequent prosecution in this State under the following circumstances: (1) The first prosecution resulted in an acquittal or in a conviction as defined in Section 1.08 and the subsequent prosecution is based on the same conduct, unless (a) the offense of which the defendant was formerly convicted or acquitted and the offense for which he is subsequently prosecuted each re-

2. *Admission of evidence of the robbery.* The defendant contends that he was dealt with unfairly at his Massachusetts trial by the introduction of excessive evidence bearing on the bank robbery. There is perhaps an irony here because in his double jeopardy argument the defendant is insistent to an extreme on there being but one trial to cover the entire criminal episode. The defendant concedes that some references to the robbery were appropriate — indeed testimonial connections with the robbery were inevitable — but he objects to the extent of the allusions made to it. However his argument is diffuse; his brief is weak in furnishing detail and leaves us guessing just where the prejudice came in.

"[E]vidence otherwise admissible does not cease to be so because it happens to show the commission of an independent crime" (*Commonwealth* v. *Green,* 302 Mass. 547, 552 [1939]), but there may come a point at which its prejudicial effect overcomes its probative value. See *Commonwealth* v. *Chalifoux,* 362 Mass. 811, 817-818 (1973). See also *Commonwealth* v. *White,* 353 Mass. 409, 420 (1967); *Commonwealth* v. *Choate,* 105 Mass. 451, 457-458 (1870). Examining the record closely, we note that evidence regarding the robbery so far as admitted bore on the propositions that the defendant possessed a machine gun at the place charged, that the defendant participated in the shooting of Gibbons and Moselunas, and that the stories of Guimond and Vidito inculpating the defendant were in substance true. Nor do we think the robbery received undue attention or emphasis.

Indeed the trial judge showed commendable energy in controlling introduction of the proof related to the robbery. He warned the jury before the Commonwealth put on its first witness that such evidence would be received for limited purposes and should not otherwise influence them: the trial was not one of a bank robbery. At bench confer-

---

quires proof of a fact not required by the other and the law defining each of such offenses is intended to prevent a substantially different harm or evil or (b) the second offense was not consummated when the former trial began. . . ."

ences he advised the prosecutor to steer away from the subject of the robbery where possible. Objections to various tendentious questions were sustained, and all but a few photographs of the robbery were excluded. Finally there was strong cautionary comment in the judge's instructions to the jury.[20]

3. *Denial of severance.* The defendant rested on the prosecution's case. Codefendant Lovell adopted a different strategy and took the stand in his own defense. Thereupon the defendant renewed his pretrial motion for a severance, which was refused.

Severance is usually a matter within the sound discretion of the trial judge (see, e.g., *Commonwealth* v. *Hogg,* 365 Mass. 290, 296 [1974]), and we think no abuse is shown here. The defendant asserts that "Lovell's defense was not only contrary to the stance taken by Cepulonis, but was inculpatory of him as well." For this statement no explanation or reference to the record is offered. The Commonwealth's case was much the same as to both defendants, and we do not perceive anything in that case or in Lovell's testimony that could create material jury confusion. If Lovell's testimony can be construed as inculpatory of the defendant, it is only by vague implication, and the defendant was at liberty to cross-examine, but did not do so.[21] Lovell in fact may have benefited the defendant by casting some doubt on the truthfulness and motivation of Guimond and Vidito.

4. *Prosecutorial behavior.* (a) *Reference to the prior Federal trial.* The judge made it unmistakably clear to the

---

[20] Objection was made to Guimond's testimony that he discussed with Lovell and Cepulonis plans to use in other robberies the automatic weapons they had acquired earlier. The defendant does not argue that this evidence was irrelevant — it showed the defendant's participation in the group which committed the crimes charged — but does contend that its prejudicial effect outweighed its value as proof. We think the very brief witness responses of which the defendant complains could have had but little effect, and the judge's refusal to exclude was not error.

[21] *Bruton* v. *United States,* 391 U.S. 123 (1968), dealing with out-of-court statements of a codefendant, is of course inapposite. See *Commonwealth* v. *Flynn,* 362 Mass. 455, 462 (1972).

prosecutor that in impeaching Lovell through his prior conviction for bank robbery, he was to avoid reference to the defendant. We join the judge in his criticism of the prosecutor for disregarding this admonition, notably by reading the Federal indictment of Lovell, Guimond, and — as he improvised — "another of Winchester," which most probably was understood as a reference to the defendant. But we agree with the judge's denial of a motion for mistrial because there was no practical possibility of material prejudice. Unavoidably the jury knew that the defendant participated in the bank robbery, and, as we have seen, the judge had used care to make it clear to them that they were not to take the robbery as indicative of the defendant's guilt of the crimes in suit.[22]

(b) *Reference to suppressed evidence.* There is complaint that the prosecutor referred to physical evidence that had been suppressed by the judge who tried the Federal bank robbery case and was therefore, by agreement of counsel, not to be introduced in evidence in the Middlesex trial. The suppressed material should have been better skirted by the prosecutor, but the defense was at fault in not objecting at its first mention and in waiting to the conclusion of lengthy testimony and moving only then for a mistrial, which the judge in his discretion refused. See *Commonwealth* v. *DiPietro*, 373 Mass. 369, 387 (1977). The references could remind the jury of the defendant's part in a bank robbery in which machine guns were carried, but that, we note yet again, was necessarily in the background of the present trial.

(c) *Reference to the defendant's failure to testify.* The prosecutor said in his summation, in effect, that the defendant's guilt was necessarily to be inferred from certain evidence to which he pointed. These remarks were not objected to, nor was an exception saved. See *Commonwealth* v. *Gouveia*, 371 Mass. 566, 571-572 (1976). In any case the

---

[22] Earlier in the trial, counsel for the defendant had himself prompted a witness to mention "the Federal trial" by cross-examining on the witness's testimony "on prior occasions."

context was such that the comments would be understood as no more than argument, if emphatic, that the evidence adduced warranted the inference. This may not be viewed as an improper comment on the defendant's failure to take the stand. To be contrasted are such prohibited lines of argument as that the evidence must be true because the defendant did not contradict it (see *Commonwealth* v. *Harlow*, 110 Mass. 411 [1872]; *Government of V.I.* v. *Bell*, 392 F.2d 207 [3d Cir. 1968]), or that the evidence was unchallenged where only the defendant could have challenged it by testifying. See *Commonwealth* v. *Borodine*, 371 Mass. 1, 10 (1976), cert. denied, 429 U.S. 1049 (1977); *United States* v. *Flannery*, 451 F.2d 880 (1st Cir. 1971).

5. *Denial of directed verdict.* The case against the defendant was powerful, as we can attest after study of the transcript, and there can be no doubt that the defendant's motion for a directed verdict of acquittal was properly denied as to all charges. See *Commonwealth* v. *Sandler*, 368 Mass. 729, 740 (1975).

*Judgments affirmed.*