GENNARO ANGIULO *vs.* COMMONWEALTH
(and three companion cases[1]).

Suffolk.    September 11, 1987. — November 4, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & LYNCH, JJ.

*Practice, Criminal*, Double jeopardy, Sentence. *Constitutional Law*, Double jeopardy. *Conspiracy. Homicide. Accessory and Principal. Racketeer Influenced and Corrupt Organization Act.*

State prosecution of defendants charged by the Commonwealth with the crime of being accessories before the fact to first degree murder, which is punishable by life imprisonment without parole, was not barred by double jeopardy principles on account of their previous convictions of Federal racketeering offenses with the same elements and based on the same evidence as the State charges, where the Federal offense was punishable "much more lightly" than the parallel State crime, in view of the statutory schemes as a whole. [74-79]

State prosecution of defendants charged by the Commonwealth with the crime of conspiracy to commit first degree murder was barred by double jeopardy principles on account of the defendants' previous convictions of Federal racketeering offenses with the same elements and based on the same evidence as the State charges, where the Federal penalty was substantially more harsh than the State punishment, in view of the statutory schemes as a whole. [79-80]

CIVIL ACTIONS commenced in the Supreme Judicial Court for the county of Suffolk on June 9, 1987.

The cases were reported by *Abrams*, J.

*Anthony M. Cardinale* (*Robert L. Sheketoff* with him) for Gennaro Angiulo.

*Matthew A. Kamholtz* for Samuel Granito.

*David Grossbaum*, Assistant District Attorney, for the Commonwealth.

---

[1] One by Gennaro Angiulo and two by Samuel Granito.

ABRAMS, J.   At the request of the Commonwealth, we issued
an expedited order on October 5, 1987, ordering the dismissal
of the indictments for conspiracy to commit murder, and further
ordering that the trial on the indictments for being accessories
before the fact to murder proceed as scheduled. This opinion
explicates the reasons underlying our order.[2]

In the United States District Court for the District of Massa-
chusetts, the defendants,[3] Gennaro Angiulo and Samuel
Granito, were convicted of violating the Racketeer Influenced
and Corrupt Organizations Act (RICO). See 18 U.S.C. § 1962
(c) and (d) (1982).[4] In Count I, the indictment charged the
defendants with conspiring to engage in racketeering activities,
among them, conspiring to murder and being accessories before
the fact to the murder of Angelo Patrizzi. In Count II, the
defendants were charged with substantive violations of the
RICO statute and, as one of several racketeering acts, the
government alleged that the defendants conspired to murder
and were accessories before the fact to the murder of Angelo
Patrizzi. The jury convicted the defendants. The judge sen-
tenced Angiulo to a forty-five year term of imprisonment and
to pay $120,000 in fines. The judge sentenced Granito to a
twenty-year term of imprisonment and to pay $35,000 in fines.[5]

---

[2] The order read as follows: "After hearing, it is ORDERED that the trial
on the indictments for accessory before the fact to murder in the first degree
proceed as scheduled. It also is hereby ORDERED that the indictments for
conspiracy to commit murder be dismissed because trial on those indictments
is barred by the principles announced in *Commonwealth* v. *Cepulonis*, 374
Mass. 487 (1978)."

[3] In this opinion we shall refer to Angiulo and Granito as the defendants.

[4] Title 18 U.S.C. § 1962 (c) (1982) provides: "It shall be unlawful for
any person employed by or associated with any enterprise engaged in, or
the activities of which affect, interstate or foreign commerce, to conduct
or participate, directly or indirectly, in the conduct of such enterprise's
affairs through a pattern of racketeering activity or collection of unlawful
debt."

Title 18 U.S.C. § 1962 (d) (1982) provides: "It shall be unlawful for
any person to conspire to violate the provisions of subsections (a), (b), or
(c) of this section" (footnote omitted).

[5] For each defendant, the United States Attorney sought an increased sentence
for dangerous special offenders pursuant to 18 U.S.C. § 3575 (1982),

After the Federal convictions and sentencing, a grand jury sitting in Essex County indicted the defendants on charges of conspiring to murder, and of being accessories before the fact to the murder of Angelo Patrizzi. Both defendants moved for dismissal of the charges against them contending that the prior Federal RICO prosecution barred the Commonwealth's prosecution on double jeopardy grounds. See *Commonwealth* v. *Cepulonis*, 374 Mass. 487 (1978). After hearing, the Superior Court judge denied the motions to dismiss. The defendants filed complaints with the Supreme Judicial Court, pursuant to G. L. c. 211, § 3, seeking review of the denial of their motions to dismiss. *Commonwealth* v. *Chatfield-Taylor*, 399 Mass. 1, 3 (1987). After hearing, a single justice reserved and reported the cases to the full court.

The sole issue on appeal[6] is whether the Commonwealth may prosecute these defendants for conspiracy to murder and for being accessories before the fact to the murder of Angelo Patrizzi. The Commonwealth stipulated that it intends to introduce the same evidence at the defendants' trial in the Superior Court as was introduced at the Federal trial on the RICO charges. On this basis, the defendants asserted that the Commonwealth's prosecution is barred by the common law doctrine of double jeopardy as enunciated in the Supreme Judicial Court's decision in *Commonwealth* v. *Cepulonis*, 374 Mass. 487 (1978), and that the denial of their motions to dismiss was error and should be reversed.

I. *Federal Proceedings.*

We turn to Counts I and II of the Federal indictments against the defendants because those counts are the only Federal

---

which provides in part: "If it appears by a preponderance of the information, including information submitted during the trial of such felony and the sentencing hearing and so much of the presentence report as the court relies upon, that the defendant is a dangerous special offender, the court shall sentence the defendant to imprisonment for an appropriate term not to exceed twenty-five years and not disproportionate in severity to the maximum term otherwise authorized by law for such felony." 18 U.S.C. § 3575 (b) (1982). The District Court judge declined to augment the defendants' sentences as authorized by this statute.

[6] The actions were consolidated for purposes of appeal.

charges relevant to these proceedings. At Federal trial, the District Court judge instructed the jury that in order to find the defendants guilty on Count I of the indictment (the RICO conspiracy count), the jury must find beyond a reasonable doubt that the defendants conspired to conduct and participate in the affairs of a racketeering enterprise which was engaged in a pattern of racketeering activities affecting interstate commerce; that the defendants agreed to participate in the activities of the enterprise; that the defendants manifested their agreement by consenting to commit two or more racketeering offenses; and, finally, that at least one conspirator had committed an overt act in furtherance of the consipracy. With regard to Count II, the District Court judge instructed the jury that the government must prove that the defendants were associated with a racketeering enterprise; that they knowingly committed at least two racketeering acts within ten years of one another and that one such offense occurred within five years of the indictment; that the defendants participated in the conduct of the enterprise's affairs; and that the enterprise engaged in activities that affected interstate commerce. As part of his instructions on the elements of the racketeering offenses for Counts I and II, the District Court judge defined the elements of murder, conspiracy to murder, and being an accessory before the fact to murder under Massachusetts law, and instructed the jury that the government must prove each and every element of these offenses beyond a reasonable doubt in order to convict the defendants of the RICO conspiracy charge in Count I and the substantive racketeering charges in Count II of the indictments.

II. *The Accessory Charge.*

In *Commonwealth* v. *Cepulonis*, 374 Mass. 487 (1978), we held that if the elements of a crime for which a defendant faces prosecution are the same as the elements of a crime for which he or she has already faced prosecution, the second prosecution may be barred on double jeopardy grounds. We noted that "this test or rule may require some modulation when applied to a case in which the prior prosecution occurred in a Federal court." *Id.* at 494-495. We said that "the fact that a Federal crime is punishable much more lightly than the parallel State

crime may justify a subsequent prosecution by the State." *Id.* at 495. Because the indictments charging accessory before the fact to murder are punished much more severely in the Commonwealth than federally, we conclude that these charges fall within the exception expressly set forth in *Cepulonis.*

A comparison of the penalties accompanying a conviction on a RICO charge and the penalties for conviction on the accessory charges shows a wide difference in the severity of the penalties for the respective Federal and State crimes with which the defendants have been charged. The RICO statute provides that any individual who violates its prohibitions shall be fined not more than $25,000, or shall be imprisoned for not more than twenty years, or both, and shall forfeit any interest in or proceeds from any racketeering enterprise. 18 U.S.C. § 1963 (Supp. II 1984). In prosecuting the defendants, the United States Attorney also sought a twenty-five year enhanced penalty pursuant to 18 U.S.C. § 3575 (1982), on the ground that the defendants are dangerous special offenders. Thus, in addition to fines and forfeitures, the defendants faced a maximum of forty-five years' imprisonment. By contrast, G. L. c. 274, § 2, provides that an accessory before the fact to a crime shall be punished in the manner provided for the punishment of the principal felon, and G. L. c. 265, § 2, provides that any individual found guilty of murder in the first degree shall be sentenced to a mandatory term of life imprisonment without the possibility of parole.

Our conclusion that the Federal crime in question is punished "much more lightly" than the State crime is based on three factors. First, because the RICO statute allows for punishment by fine without imprisonment, it is clear that the minimum statutory penalty for the Federal crime is far less severe than the minimum State penalty of life imprisonment without parole. Second, as a maximum penalty, a RICO violation carries a sentence of twenty years' imprisonment (with or without fines and forfeitures), or, in the case of a dangerous offender, forty-five years' imprisonment (with or without fines and forfeitures). The State statute's maximum penalty is, again, life imprisonment without parole. Third, under Federal law, an individual

convicted of a RICO violation and given the maximum sentence of twenty years' imprisonment may be eligible for parole after serving one-third of that sentence. 18 U.S.C. § 4205 (a) (1982). If sentenced to a term of more than thirty years (as in the case of a defendant given an enhanced penalty), an individual convicted of a RICO violation may be eligible for parole after serving ten years of the original sentence. No possibility of parole exists for the convicted accessory before the fact to murder in the first degree.[7] G. L. c. 265, § 2. See *Commonwealth* v. *Forde*, 392 Mass. 453, 459 (1984).

The defendants assert that in *Cepulonis* we upheld the dismissal of the State charges of armed robbery and confining against that defendant following a Federal trial for bank robbery, in spite of the fact that the Commonwealth's penalties were more severe than the Federal penalties. The defendants point out that the Commonwealth's armed robbery and confining charges carried a maximum sentence of life imprisonment, G. L. c. 265, §§ 17 & 21, whereas the Federal bank robbery statute had a maximum penalty of twenty years and twenty-five years, 18 U.S.C. § 2113 (a) and (d) (1982). From that fact the defendants conclude that the life sentence for murder in the first degree should not be dispositive. We do not agree. The defendants' argument ignores the discretionary nature of the maximum life sentences permitted under the State statutes under consideration in *Cepulonis* and also ignores the fact that parole is available under both the Federal and State statutes, and that

___

[7] A person convicted of being an accessory before the fact to murder in the first degree may have his or her sentence commuted by the Governor of the Commonwealth pursuant to G. L. c. 127, § 152, and thereby become eligible for parole. However, we do not think the possibility of gubernatorial commutation is the equivalent of parole. A gubernatorial commutation may be granted only at the discretion of the Governor and the Executive Council, and unlike parole eligibility, the availability of a gubernatorial commutation is not governed by statutory standards and regulations. Compare G. L. c. 127, § 152, with G. L. c. 127, §§ 128-151K, and 103 Code Mass. Regs. §§ 411.01 - 441.14 (regulations governing sentence reductions). Moreover, an executive commutation merely makes a convicted defendant eligible for parole; thus, the need for a commutation is a barrier which is not faced by defendants whose convictions of crimes are subject to the statutes governing parole.

under the State statute probation is available. 18 U.S.C. § 4205
(a) (1982). *Aldoupolis* v. *Commonwealth*, 386 Mass. 260, 267,
cert. denied sub nom. *Savoy* v. *Massachusetts*, 459 U.S. 864
(1982). Clearly, the Federal RICO charges for which the de-
fendants stand convicted are punished much more lightly than
the State charges of being accessories before the fact to murder.[8]
Thus, the State prosecution is not barred on double jeopardy
grounds. *Cepulonis, supra* at 495. Accord *People* v. *For-
micola*, 407 Mich. 293, 298 (1979); *People* v. *Cooper*, 398
Mich. 450 (1976).

In *Cepulonis*, we relied on the Michigan case of *People* v.
*Cooper*, 398 Mich. 450 (1976). That case, however, did not
compare the statutory schemes in determining whether double
jeopardy principles barred the subsequent trial, but only com-
pared the maximum possible sentences. Subsequently, the Su-
preme Court of Michigan divided over the narrowness of such
a focus. See *People* v. *Gay*, 407 Mich. 681 (1980) (a 4-3
decision). In *People* v. *Gay*, the Supreme Court of Michigan
determined that the maximum sentence in a felony-murder
prosecution was so similar to that in a Federal prosecution for
robbery, assault by means of a dangerous weapon while com-
mitting a bank robbery, and taking the life of another while
committing a bank robbery, that a State prosecution was barred.
The Michigan court concluded that discretion for early release,
similar to the Federal parole, existed in Michigan through the
device of executive pardon or reprieve. *Id.* at 698. See note 7,
*supra*. The Michigan court rejected the argument that the Federal

---

[8] At oral argument, counsel for Angiulo asked the court to consider that
the Parole Board has advised the defendants that they will be required to
serve at least two-thirds of their Federal sentences before they will be
eligible for parole. However, when we compared the severity of the sen-
tences available under the State and Federal statutes, we considered only
the maximum and minimum *possible* sentences, not those the defendants
actually received. We also do the same when considering parole eligibility.
Furthermore, counsel for Angiulo also asked this court to consider that the
defendants' ages make it likely that their Federal sentences are, in effect,
life sentences. (Angiulo is 68 years old; Granito is in his eighties.) However,
we consider only the sentencing schemes as enacted by the United States
Congress and the Massachusetts Legislature, and not as applied to the
circumstances of these particular defendants.

statutory punishment most closely comported with the State's penalty for second degree murder, and the statute therefore represented a significant variant from the State's penalty for first degree felony-murder. Based on the Michigan court's conclusion that there was facial identity of the maximum life sentences available under either statute, the court held that the fact that under one statute the sentence was mandatory and the other discretionary was of no consequence. The court did note that Michigan's minimum sentence for second degree murder was potentially much less severe — any term of years or probation — than the Federal minimum sentence of ten years. *Id.* at 700-701.

Three Justices dissented in *Gay*. The dissenting Justices compared the Federal and State statutes and concluded that their maximum penalties were "greatly disparate" within the meaning of *Cooper* because (1) while the Federal statute provided for a mandatory minimum sentence of not less than ten years, the maximum sentence was entirely discretionary; (2) the Federal statute provided for discretionary parole eligibility while the State statute did not; (3) discretionary commutation of defendants' sentences had been very sparingly allowed in the past half-century; and (4) the Federal statutory penalty more closely resembled the State scheme for second degree murder. *Id.* at 725-726 (Williams, J., dissenting). Moreover, the dissenters noted that *both* statutory schemes in *Cooper* provided for discretionary maximum penalties, in the case of the Federal statute for twenty years, and in the case of the State statute for life or for any term of years. The dissenters further noted that parole was available under both statutes. *Id.* at 727-728.

After reviewing *People* v. *Gay*, we conclude that considering the statutory scheme as a whole provides a more thoughtful analysis and allows for a more precise definition of the true severity of the parallel statutory punishments. In our view, "an analysis which focuses on the maximum possible penalty while ignoring much lower mandatory minimums and the possibility of parole is not wholly satisfactory." Van Hoek, Criminal Procedure, 1980 Annual Survey of Michigan Law, 27 Wayne

L. Rev. 695, 727 (1981).[9] Accordingly, we conclude that the defendants may be tried on charges of being accessories before the fact to the murder of Angelo Patrizzi without violating the principles of double jeopardy as set forth in *Commonwealth* v. *Cepulonis*.

III. *The Conspiracy Charge.*

The considerations advanced with regard to the charges of being accessories before the fact to murder compel the opposite conclusion when applied to the charges of consipracy to murder. First, as in the case of the accessory charges, we need not consider whether the same evidence will be introduced to prove the crime, since the Commonwealth has so stipulated. Second, the penalties for the Federal RICO charges are very similar to the State-enacted penalties for conspiring to commit a felony. As noted above, RICO provides for a maximum penalty of twenty years' incarceration with or without fines and forfeitures, subject to earlier release on parole. The Commonwealth's criminal penalty for conspiracy to commit a felony punishable by life imprisonment provides for a similar penalty of a fine of not more than ten thousand dollars or by imprisonment of not more than twenty years or both, or by a jail sentence of not more than two and one-half years. G. L. c. 274, § 7. Under the Commonwealth's scheme, the defendant is eligible for parole. Indeed, in the case of conspiracy, the Federal penalty is substantially more harsh than the State penalty when one considers that the Federal defendant is subject to the twenty-five year dangerous offender enhancement. We therefore conclude that the principles of double jeopardy enunciated in *Commonwealth* v. *Cepulonis* bar the Commonwealth from prosecuting

---

[9] New Hampshire, which adopted *People* v. *Cooper* as part of its common law, also has not adopted the standard of looking only at the statutory maximum penalties. See *State* v. *Heinz,* 119 N.H. 717 (1979).

the defendants on charges of conspiring to murder Angelo Patrizzi.[10]

*j*

---

[10] We note that, under the Massachusetts Rules of Criminal Procedure, the conspiracy charges against the defendants have to be tried in a proceeding separate from the trial on the charges of being accessories before the fact to murder. See rule 9 (e) of the Massachusetts Rules of Criminal Procedure, 378 Mass. 861 (1979), which provides: "An indictment or complaint for conspiracy to commit a substantive offense shall not be tried simultaneously with an indictment or complaint for the commission of the substantive offense, unless the defendant moves for joinder of such charges pursuant to subdivision (a) of this rule." Thus, the Commonwealth's prosecution on the charges of being accessories before the fact to murder has not been prejudiced by the dismissal of the conspiracy charges, since the defendants could not be tried on both charges in the same proceeding.